**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 37061**

THE VANDERFORD COMPANY, INC., a
Nevada corporation; and PRIMARY
RESIDENTIAL MORTGAGE, INC., a
Nevada corporation f/k/a VANDERFORD
CENTER, INC.

    Plaintiffs-Counterdefendants
-Respondents,

v.

PAUL KNUDSON, personally and
individually,

    Defendant-Crossdefendant-Counter
    Crossclaimant-Appellant,

and

AUSTIN HOMES, LLC, a Utah limited
liability company, J.R. DEVELOPMENT,
LLC, a Utah limited liability company,
and JOHN DOES 1-20,

    Defendants,

and

THE PINES TOWNHOMES, LLC, an
Idaho limited liability company,

    Defendant-Counterclaimant,

and

RICHARD L. GREIF and JODY L.
GREIF,

    Defendants-Counterclaimants-
    Crossclaimants-Counter
    Crossdefendants-Respondents,

and

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2011 Term

2011 Opinion No. 42

Filed: March 21, 2011

Stephen W. Kenyon, Clerk

1

)
)
)
)
)
)
)
)
)

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County.  Hon. Thomas J. Ryan, District Judge.

Order granting motion to enforce settlement and dismiss Knudson's claims, <u>reversed</u>.

Paul Knudson, Fruitland, pro se appellant argued.

R. Brad Masingill, Weiser, and Troupis Law Office, Eagle, for respondents Greif. Christ T. Troupis argued.

Brassey, Wetherell & Crawford, Boise, for respondents Vanderford Company and Primary Residential Mortgage, Inc.

Dorsey & Whitney, Salt Lake City, UT, for respondents Vanderford Company. Douglas J. Parry argued.

Elam & Burke, P.A., Boise, for intervenor.

_____

BURDICK, Justice

In *Vanderford Co. v. Knudson*, 144 Idaho 547, 165 P.3d 261 (2007) (*Vanderford I*), we remanded various issues in this lawsuit to the district court, and upon remand, the district court ordered the parties to mediation.  At issue in this appeal is the existence of two settlement agreements which purportedly settle the entire lawsuit: (1) an agreement between Appellant Paul Knudson (Knudson) and Respondent The Vanderford Company, Inc. (Vanderford), whereby Knudson allegedly promised to join in any settlement that Vanderford might reach with the Respondents Richard and Jody Greif (the Greifs); and (2) an agreement between Vanderford and the Greifs reached at the court-ordered mediation settling all remaining claims.  The Greifs, who claim that both settlement agreements exist, moved to enforce Knudson's agreement with Vanderford and moved to dismiss all of Knudson's claims.  The district court granted the Greifs' motion and dismissed all of Knudson's claims.  Knudson appeals on multiple grounds, generally

arguing that he never entered into the agreement with Vanderford and that no agreement was reached between the parties at the mediation. We hold that issues of material fact precluded the district court from granting the Greifs' motion, and therefore, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The settlement agreement at issue in this case arose out of negotiations that took place after this Court's decision in *Vanderford I*. In that case, we set forth the following underlying facts:

> Paul Knudson and Richard Greif entered into a business arrangement for the development of real estate in Payette called the Pines Townhomes, LLC (the LLC). . . . Vanderford loaned several hundred thousand dollars in short term loans for the construction and development of projects including the Pines Townhomes (the Pines). Loans for the development of the Pines were financed through loan number 482 (Loan 482) and secured by a deed of trust on the portion of the property to be improved by the loan. The LLC was unable to sell the properties as planned in order to repay the Vanderford short-term loans. The LLC's operating agreement provided that either partner could purchase the units. Greif and his wife Jody Greif claim they purchased all 35 town homes as investment properties. However, Knudson claims that the properties were not purchased, but that he and Richard Greif agreed that Greif would hold them in trust for the LLC to be used as rental units. The Greifs signed two notes and trust deeds (the Greif Trust Deeds) in order to make themselves personally liable for $180,000 of the LLC's construction loan debt. The parties dispute their reasons for signing the Greif Trust Deeds.
>
> [On December 28, 2001] Vanderford filed suit seeking to recover loan funds of approximately $500,000 and to foreclose on the Greif Trust Deeds. A jury trial was held. The jury found: (1) a contract between Vanderford and the Greifs which was not breached; (2) no unjust enrichment due to the dealings between Vanderford and the Greifs; (3) a breached contract between the Pines and Vanderford with damages of approximately $153,000; (4) no unjust enrichment due to the dealings between the LLC and Vanderford; (5) no contract between Knudson and the Greifs; (6) Greifs were unjustly enriched in the amount of $237,500 through their dealings with Knudson; (7) no slander of title against the properties; and (8) Vanderford was not negligent when it did not release liens against the properties. Based on the jury's findings the trial court did not allow Vanderford to foreclose.
>
> Knudson and Vanderford appealed and the two appeals were consolidated.

144 Idaho at 551–52, 165 P.3d at 265–66.

In *Vandeford I*, we concluded:

> Vanderford cannot foreclose on the Greif Trust Deeds because the language in the Notes fails to confer any real property as collateral. The trial court's findings articulated in its order were sufficient to meet the purpose of

3

52(a) requiring separate findings of fact and conclusions of law. The Court declines to reach the issue of whether the trial court erred when it quashed the lien of the Greif Trust Deeds because Vanderford failed to support its argument with any legal authority. The case is remanded for new trial on those matters determined by the jury, the trial to include jury instructions regarding fraudulent conveyance, oral agreement, and breach of contract because the requested instructions were a correct statement of the law, supported by a reasonable view of the evidence, and not adequately covered by the other instructions. The alter ego issue is equitable in nature to be determined by the trial court. The district court did not abuse its discretion in failing to give the slander of title jury instruction because no reasonable view of the evidence could support the instruction. There was no contract to bar Knudson's award on the theory of unjust enrichment, and sufficient evidence supported the jury's award. However, the verdict on this issue is vacated so it may be considered together with the other jury issues. The determination of a prevailing party is dependent upon the outcome of issues on remand. The Court declines to award attorneys fees for the appeal to any party. The trial court may make an award of attorney fees for this appeal dependent upon the final outcome of the case.

*Id.* at 559, 165 P.3d at 273.

On September 10, 2008, upon remand from this Court, the district court referred the case to mediation pursuant to I.R.C.P. 16(k). A mediation was held, and what took place between the parties before, during and after the mediation is the subject of dispute in this appeal.

On November 10, 2008, Knudson, acting pro se, filed the Notice of Mediation Failure and Motion to Set Jury Trial Date, asserting that no settlement had been reached at the mediation and requesting to proceed to trial. The Greifs responded, claiming: (1) they were under the belief that Knudson reached a settlement agreement with Vanderford prior to the mediation (the "Knudson-Vanderford Settlement") whereby Knudson agreed to let Vanderford negotiate a settlement with the Greifs and promised to join in that settlement; (2) in light of the Knudson-Vanderford Settlement, the Greifs were able to reach a settlement agreement with Vanderford (the "Greifs-Vanderford Settlement") at the mediation settling all disputes in the case; (3) all that remained was to memorialize the Greifs-Vanderford Settlement in a written agreement and to provide documentation to Vanderford regarding the real property owned by the Greifs; but (4) Knudson was not fulfilling his obligation from the Knudson-Vanderford Settlement to join in the Greifs-Vanderford Settlement. Vanderford responded, agreeing with the Greifs that the lawsuit was fully resolved based upon both the Knudson-Vanderford Settlement and the Greifs-

4

Vanderford Settlement.[1]  On December 1, 2008, the district court held a hearing on Knudson's motion and requested that Knudson submit an unsworn written explanation of his claims within thirty days.  Accordingly, Knudson submitted Paul Knudson's Explanation of Failure to Reach Agreement at Mediation (hereinafter "Knudson's Explanation").

On January 8, 2009, the Greifs filed the Motion to Enforce Settlement and Dismiss Paul Knudson's Claims Under Rule 12(b)(6), I.R.C.P (the "Greifs' Motion").  The Greifs' Motion sought an order directing Knudson to comply with the terms of the Knudson-Vanderford Settlement whereby Knudson allegedly authorized Vanderford to negotiate with the Greifs at the mediation and promised to join in the resulting settlement.  The Greifs submitted a memorandum in support of their motion as well as affidavits from their attorney Christ Troupis (the "Troupis Affidavit") and Richard Greif (the "Greif Affidavit").  Knudson submitted a memorandum and an affidavit in opposition to the Greifs' Motion.  Vanderford submitted a memorandum in opposition to Knudson's memorandum and submitted an affidavit of its attorney, Douglas Perry (the "Perry Affidavit").  Knudson responded to Vanderford's memorandum by filing another memorandum and another affidavit (the "Knudson Affidavit").

The Troupis Affidavit set forth the following relevant facts:

3.  My client's primary concern during the mediation was the resolution of Paul Knudson's claim.  I advised Justice Trout that any settlement we reached had to include the elimination of all of Paul Knudson's claims and asked her to convey that to Vanderford and Knudson.  During the day-long mediation, we received several offers of settlement from Vanderford.  Each of these offers was presented by Justice Trout, who advised my clients and me that each of the offers of settlement we received from Vanderford included the elimination of all of Paul Knudson's claims as well.

4.  At all times, I believed that Vanderford had authority to settle not only its own claims, but those of Paul Knudson . . . .

. . .

6.  When I met with Vanderford's counsel to discuss the final settlement offer, they advised me that this settlement would conclude the entire litigation, including all of Paul Knudson's claims.  I was advised that Vanderford had reached a separate agreement with Paul Knudson and that the Greifs did not need to negotiate with him, but could rely on Vanderford's representation that they had resolved Paul Knudson's claims, and no further consideration of Paul Knudson's claims was necessary in the Vanderford-Greif settlement agreement.  I indicated to Vanderford's counsel that my clients would only

---

[1]  On appeal, Vanderford now argues that no agreement was reached during mediation.

5

agree to a settlement if it meant that the entire case would be concluded and their assurance that Paul Knudson's claims were included was a central component to the settlement agreement. Vanderford's counsel reassured me that this was in fact the case and that they would deal exclusively with Paul Knudson thereafter.

7. Based upon these representations, I conveyed Vanderford's final settlement offer to my clients, the Greifs, and they accepted it.

8. [At the end of the mediation,] we were unable to memorialize the Vanderforford-Greif settlement agreement in writing. However, both Vanderford and [the] Greifs are in agreement that the case has been settled and are in the process of finalizing the documentation of the settlement.

. . .

11. The only issue preventing the Greifs and Vanderford from concluding the settlement agreement is Paul Knudson's claim that he did not reach an agreement with Vanderford granting them authority to settle his claims.

The Perry Affidavit set forth the following relevant facts:

6. On April 19, 2002, Mr. Knudson confessed judgment in this case in favor of Vanderford in the amount of $609,043.30 plus interest accruing thereon and attorney's fees.

7. Prior to the mediation Vanderford had agreed not to execute on its judgment against Mr. Knudson until the outcome of the initial trial was determined and the appeal to the Idaho Supreme Court was completed. Vanderford has continued to forbear execution of its judgment.

8. During the lunch break [at the mediation] on October 14, 2008, Mr. Knudson and Vanderford's president and counsel met over lunch. At that time, Mr. Kenneth Knudson on behalf of Vanderford reaffirmed and clarified Vanderford's agreement with Paul Knudson . . . regarding settlement of all claims in this action. Kenneth Knudson stated the agreement as follows: Vanderford would accept from Paul Knudson an assignment of all pledged assets in exchange for a full release of all debts, liabilities, or deficiencies due to Vanderford . . . .

9. Kenneth Knudson . . . stated that Vanderford agreed to release Mr. Knudson a single lot valued at approximately $40,000 and continue forbearance on the collection of the equipment note until repaid.

10. Kenneth Knudson further stated that Vanderford agreed to pay the existing sub-contractor claims against Bishops Ranch that would otherwise give rise to mechanics liens as part of their assumption of ownership which would also free Mr. Knudson of these debts and that would make it possible for Mr. Knudson to use these subcontractors in the future.

11. In exchange, Mr. Paul Knudson agreed to convey his interest in the Pines Townhomes LLC and the Pines and Quail Cove properties, and join in the

6

settlement Vanderford might reach with the Greifs, so long as the settlement included a release of all claims the Greifs may claim against Mr. Knudson.

. . .

16. After reading the terms and provisions of the proposed settlement agreement to Mr. Knudson, Justice Trout asked Mr. Knudson whether he would agree to the settlement to which he responded that he understood the terms of the settlement agreement and that he agreed to be a party to it if it worked for Vanderford, as he had committed to settling his obligations to Vanderford, and repeated over and over that "Vanderford was the one who had lost everything on this deal and I only want to see that Vanderford gets what is fair."

17. Mr. Knudson stated his agreement to go along with the settlement, agreeing to whatever Vanderford wanted from the Greifs. At no time during that meeting did I hear Mr. Knudson object to any terms or conditions of the settlement agreement before Justice Trout, in fact he expressed his frustration that under the terms of [the Knudson-Vanderford Settlement] he really could not object to it.

. . .

19. On October 23, 2008, by e-mail from Kenneth Knudson, I was notified for the first time that Mr. Knudson would not sign the settlement agreement as agreed to at the mediation.

The Knudson Affidavit set forth the following relevant facts:

3. That I, Paul Knudson, did NOT enter into or sign any settlement agreement during the mediation session.

4. That I, Paul Knudson, have not assigned or authorized anyone to negotiate a settlement with [the] Greifs on my behalf.

5. That I, Paul Knudson, have not entered into any settlement contract, before, during or after mediation with Vanderford or any other parties.

. . .

8. . . . [T]he parties engaged in mediation, that was agreed to be continued from our home offices because it appeared that "we have a framework upon which an agreement may be crafted". This framework appears to have collapsed immediately after [the] mediation session ended.

9. That none of the settlement discussions, proposals and ideas that have been exchanged between Vanderford and Paul Knudson, before, during and after mediation, have resulted in a meeting of the minds, been reduced to writing and agreed upon by the parties.

On March 23, 2009, the district court heard oral argument on the Greifs' Motion. On April 20, 2009, the district court found that the Knudson-Vanderford Settlement was reached and included, amongst other things, the assignment of Knudson's rights against the Greifs in this

7

lawsuit to Vanderford.  On the same day, the district court granted the Greifs' Motion and dismissed all of Knudson's claims in the action pursuant to I.R.C.P. 12(b)(6).

On May 8, 2008, Knudson appealed.  We dismissed Knudson's appeal, because a final judgment had not yet been entered by the district court.  On June 29, 2009, the district court granted the Greifs' Motion for Attorneys Fees and Costs against Knudson pursuant to I.R.C.P. 11(a)(1) in the amount of $3,675.  On September 14, 2009, the district court denied Knudson's Motion to Reconsider the Memorandum Decision and Order Granting Greif's Motion for Attorney Fees and Costs.  On September 11, 2009, the district court entered a final judgment for the April 20, 2009 Memorandum Decision and Order and the Order Granting Greif's Motion. On October 22, 2009, Knudson appealed.

## II.  STANDARD OF REVIEW

Knudson appeals the district court's Memorandum Decision and Order granting, and its subsequent Order enforcing, the Greifs' Motion to Enforce Settlement and Dismiss Paul Knudson's Claims Under Rule 12(b)(6).

In *Goodman v. Lothrop*, this Court explained:

> The existence of a valid agreement of compromise and settlement is a complete defense to an action based upon the original claim.  The agreement supersedes and extinguishes all pre-existing claims the parties intended to settle.  In an action brought to enforce an agreement of compromise and settlement, made in good faith, the court will not inquire into the merits or validity of the original claim. All that remains before this Court is the question of the validity and enforceability of the mediation agreement at issue.

143 Idaho 622, 625, 151 P.3d 818, 821 (2007) (citations and quotations omitted).  A party to a lawsuit in which a settlement agreement is subsequently reached need not initiate a new civil lawsuit to enforce the settlement agreement.  *See Mihalka v. Shepherd*, 145 Idaho 547, 551, 181 P.3d 473, 477 (2008).  In *Mihalka*, we explained:

> We did observe [in *Goodman*] that because a settlement agreement is a new contract settling an old dispute, it is better practice for litigants to amend their pleadings to add a cause of action for breach of contract rather than, as here, filing a motion for summary judgment.  Nevertheless, we recognized that a party may ask the trial court to enforce a settlement reached in mediation before the original suit is dismissed.

*Id.* (citations omitted).

A motion for the enforcement of a settlement agreement is treated as a motion for summary judgment when no evidentiary hearing has been conducted.  *Ogden v. Griffith*, 149

Idaho 489, __ n.1, 236 P.3d 1249, 1252 n.1 (2010). In *Goodman*, which had a similar procedural posture to this case, we explained:

> Goodman's "Motion to Enforce [the] Settlement Agreement" functioned as a motion to dismiss the action under I.R.C.P. 12(b)(6) for failure to state a claim upon which relief could be granted. When ruling on such a motion a court looks no further than the pleadings. If a court nevertheless considers material outside the pleadings "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." I.R.C.P. 12(b). Here, in ruling on the motion the district court went beyond the contents of the pleadings, examining and interpreting the mediation agreement, Hess's deposition testimony, as well as affidavits and exhibits presented by the parties. Having done so, the district court's ruling must be treated as a motion granting summary judgment, even though in this case the district court did not follow the formalities of such a ruling. I.R.C.P. 12(b).

143 Idaho at 626, 151 P.3d at 822 (case citations and case quotations omitted).

> We set forth in *Banner Life Insurance Co. v. Mark Wallace Dixson Irrevocable Trust*:
>
> On appeal from an order granting a party's motion for summary judgment, we employ the same standard of review that the trial court uses in ruling on the motion. Summary judgment is appropriate when the pleadings, affidavits, and discovery documents before the court indicate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). The moving party carries the burden of proving the absence of a genuine issue of material fact.
>
> In construing the record on a motion for summary judgment, all reasonable inferences and conclusions must be drawn in favor of the party opposing summary judgment. The nonmoving party, however, "may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or . . . otherwise . . ., must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). A mere scintilla of evidence is not enough to create a genuine issue of fact, but circumstantial evidence may suffice. Still, the evidence offered in support of or in opposition to a motion for summary judgment must be admissible.

147 Idaho 117, 123, 206 P.3d 481, 487 (2009) (case citations omitted).

### III. DISCUSSION

Knudson argues that the district court erred in finding that he entered into a settlement agreement with Vanderford prior to mediation and erred in finding that the mediation produced a settlement agreement between the Greifs and Vanderford. Because this issue is dispositive, we will not address the other issues Knudson raises on appeal.

As a preliminary matter, we seek to clarify the interaction of the two settlement agreements at issue in this appeal. Knudson appealed the district court's Memorandum Decision

9

and Order and its Order Granting Greifs' Motion. The Greifs' Motion sought to enforce only the Knudson-Vanderford Settlement, in which Knudson allegedly authorized Vanderford to negotiate on his behalf at the mediation and promised to join in a settlement that Vanderford might reach with the Greifs.[2] The Greifs' Motion did *not* seek to enforce the Greifs-Vanderford Settlement, which allegedly was reached at mediation and settled all remaining claims in the lawsuit. Accordingly, the district court's order granting the Greifs' Motion refers to the Knudson-Vanderford Settlement and never mentions the Greifs-Vanderford Settlement; however, the existence of both settlement agreements is at issue in this appeal.

In order to uphold the district court in dismissing Knudson's claims, both of the alleged settlement agreements must exist. If Knudson never entered into the Knudson-Vanderford Settlement (meaning he never authorized Vanderford to negotiate on his behalf at mediation and/or never promised to join in a settlement reached at the mediation), then the district court erred in enforcing the Knudson-Vanderford Settlement and dismissing Knudson's claims. Even if we uphold the district court's decision to enforce the Knudson-Vanderford Settlement, we can uphold the decision to dismiss Knudson's claims only if the Greifs-Vanderford Settlement also exists, because if the Greifs-Vanderford Settlement was never entered into, then there is no subsequent settlement extinguishing Knudson's claims against the Greifs which Knudson is bound to join by virtue of his earlier agreement with Vanderford.

**A. Genuine issues of material fact precluded the district court from granting the Greifs' Motion to enforce the Knudson-Vanderford Settlement and dismiss Knudson's claims.**

Knudson argues that the district court erred in granting the Greifs' Motion because he raised genuine issues of material fact concerning the enforceability of the Knudson-Vanderford Settlement and the Greifs-Vanderford Settlement. The Greifs argue that the district court had substantial evidence upon which to find that the Knudson-Vanderford Settlement was an enforceable agreement.

Because the district court granted the motion to enforce the settlement agreement by reference to materials other than the Rule 12(b)(6) pleadings (namely, Knudson's Explanation and the affidavits submitted by the parties), the motion is to be treated as a summary judgment motion. *See Ogden*, 149 Idaho at __ n.1, 236 P.3d at 1252 n.1. "In an appeal from summary judgment, this Court will determine whether any genuine issues of material fact exist and

---

[2] No party raises any issue concerning whether the Greifs have standing to enforce the Knudson-Vanderford Settlement.

whether the moving party is entitled to judgment as a matter of law." *Lindsey v. Cook*, 139 Idaho 568, 570, 82 P.3d 850, 852 (2003) (citation omitted). Thus, the question in this case is not whether there was substantial evidence to support the district court's finding that the parties entered into the alleged settlement agreements; rather, the question is whether any genuine issues of material fact exist concerning those settlement agreements.

A settlement agreement "stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally." *Wilson v. Bogert*, 81 Idaho 535, 542, 347 P.2d 341, 345 (1959). "A contract must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Giacobbi Square v. PEK Corp.*, 105 Idaho 346, 348, 670 P.2d 51, 53 (1983). "Whether the parties to an oral agreement or stipulation become bound prior to the drafting and execution of a contemplated formal writing is largely a question of intent." *Kohring v. Robertson*, 137 Idaho 94, 99, 44 P.3d 1149, 1154 (2002) (quotation omitted). "Generally the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of facts." *Shields & Co. v. Green*, 100 Idaho 879, 882, 606 P.2d 983, 986 (1980)).

In granting the Greifs' Motion, the district court primarily relied on the statements from Knudson's Explanation, which was the unsworn written document submitted by Knudson at the district court's request for the purpose of clarifying his position at oral argument concerning his Notice of Mediation Failure and Motion to Set Jury Trial. The district court interpreted certain statements in Knudson's Explanation to be admissions by Knudson that he entered into a settlement agreement with Vanderford whereby he authorized Vanderford to negotiate a settlement with the Greifs (the Knudson-Vanderford Settlement). The district court erred in relying on these statements. "[T]he evidence offered in support of or in opposition to a motion for summary judgment must be admissible." *Banner Life Ins. Co.*, 147 Idaho at 123, 206 P.3d at 487. Knudson's Explanation was not a proper source for facts on summary judgment, as it was an unverified memorandum. Furthermore, the statements made in Knudson's Explanation do not constitute a judicial admission that Knudson entered into the Knudson-Vanderford Settlement. "To be a judicial admission a statement must be a deliberate, clear, and unequivocal statement of a party about a concrete fact within the party's knowledge." *Cordova v. Bonneville Cnty. Joint Sch. Dist. No. 93*, 144 Idaho 637, 641 n.3, 167 P.3d 774, 778 n.3 (2007). While the statements

upon which the district court relied can conceivably be read to suggest that Knudson acknowledged entering into the Knudson-Vanderford Settlement, the statements themselves are far from clear and are internally contradictory, and when read in the context of Knudson's Explanation as a whole, the statements become even less clear.

The affidavits submitted by the parties are the only admissible evidence which was before the district court when it decided the Greifs' Motion. The district court does not refer to any of the affidavits in its Memorandum Decision and Order or in its Order Granting Greifs' Motion other than merely stating in the Order Granting Greifs' Motion that it reviewed and considered the affidavits in reaching its decision. We now look to the affidavits to determine whether any genuine issues of material fact are in dispute.

First, we consider the Knudson-Vanderford Settlement. The Perry Affidavit and the Troupis Affidavit both set forth facts suggesting Knudson and Vanderford entered into an agreement whereby Knudson (1) authorized Vanderford to negotiate with the Greifs at the mediation on his behalf and (2) promised to join in the resulting settlement if it resolved all of Knudson's and the Greifs' claims against each other. However, the Knudson Affidavit states that Knudson never authorized anyone to negotiate a settlement with the Greifs on his behalf, that he never entered into any settlement with Vanderford and that the discussions he had with Vanderford never culminated in a meeting of the minds necessary to form a binding agreement. Drawing all reasonable inferences in favor of Knudson, as he is the non-moving party, it is reasonable to conclude from the affidavits that, even though Knudson engaged in discussions with Vanderford, Knudson never settled with Vanderford and never authorized Vanderford to negotiate with the Greifs on his behalf.

Second, we consider the Greifs-Vanderford Settlement. The Perry Affidavit and the Troupis Affidavit both support finding that the Greifs-Vanderford Settlement was reached at mediation and that this settlement, in conjunction with the Knudson-Vanderford Settlement, would settle the entire lawsuit.[3] However, the Knudson Affidavit states that the mediation produced only a framework for crafting an agreement. According to the Knudson Affidavit, it

---

[3] On appeal, Vanderford now contends that no agreement was reached at mediation. At oral argument before this Court, Perry (Vanderford's counsel in this matter) explained that the Greifs and Vanderford were unable to finalize and reduce to writing the agreement that they thought they reached at mediation because it turned out that they did not agree with each other with respect to certain material terms. For purposes of this appeal, Vanderford's change in position is irrelevant, as our analysis is limited to considering the admissible evidence at the time the district court ruled on the Greifs' Motion.

12

was established at the end of the mediation that the parties would continue working on the agreement from their home offices after mediation, but according to Knudson, the negotiations fell apart thereafter. Drawing all reasonable inferences in favor of Knudson, it is reasonable to believe that the parties to the mediation merely reached an agreement to agree and had not yet entered into an enforceable settlement agreement.

We addressed a situation similar to that presented by the Greifs-Vanderford Settlement in *Lindsey v. Cook*, 139 Idaho 568, 82 P.3d 850 (2003). In *Lindsey*, the district court granted summary judgment upon finding that the parties had entered into a binding mediation agreement that settled the lawsuit; however, we found that there was a genuine issue of material fact regarding the binding nature of the mediation agreement and vacated and remanded the case. *Id.* at 569, 82 P.3d at 851. In *Lindsey*, the mediation produced a handwritten document signed by the parties and their attorneys, specifying that three other documents would be drafted, including a stipulation. *Id.* The Lindseys' attorney drafted the stipulation and forwarded it to the Cooks and their attorney, all of whom signed the stipulation. *Id.* Thereafter, however, the Lindseys refused to sign the stipulation and terminated their attorney. *Id.* The Cooks amended their answer to add the affirmative defense of accord and satisfaction and filed the motion for summary judgment which the district court granted. *Id.* In vacating and remanding, we explained:

> The Lindsey's [sic] affidavit raised a genuine issue of material fact as to whether the mediation agreement was a final binding agreement or a preliminary agreement subject to change. At the district court level, the Cooks filed their Motion for Summary Judgment. In response, the Lindseys filed a Motion to Dismiss Summary Judgment and supported it with an affidavit. The . . . affidavit stated that the ground rules set out by the mediator "were that anything said or signed there was not binding. The mediation was [an] informal meeting and that any agreement was subject to change and we had time to go home and think about it. This was a [preliminary] agreement and was not binding . . . ."

*Id.* at 570, 82 P.3d at 852 (first alteration in the original).

Thus, we hold that the district court erred in granting what was in effect summary judgment in favor of the Greifs and in dismissing Knudson's claims, because Knudson raised genuine issues of material fact concerning the existence of both the Knudson-Vanderford Settlement and the Greifs-Vanderford Settlement in his affidavit. It appears that the district court ultimately made a credibility determination in reaching its decision. However, judging credibility is not appropriate during summary judgment proceedings where no evidentiary

13

hearing has been held. *See Baxter v. Craney*, 135 Idaho 166, 172, 16 P.3d 263, 269 (2000) ("It is not proper for the trial judge to assess the credibility of an affiant at the summary judgment stage when credibility can be tested in court before the trier of fact."). When presented with the conflicting facts in the affidavits regarding the existence of both alleged settlement agreements, the district court should have either denied the Greifs' Motion or held an evidentiary hearing.[4] Thus, we reverse the district court's decision and order granting the Greifs' Motion.

**B.  No attorney fees are awarded.**

Knudson requests attorney fees pursuant to I.C. § 12-120(3) in the issues section of his brief but fails to support this request in the argument section of his brief. "[W]hen attorney fees are requested, but are not discussed in the argument portion of the brief, the request will not be considered." *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 768, 992 P.2d 751, 763 (1999). Therefore, we decline to consider Knudson's request for attorney fees.

The Greifs request attorney fees under I.C. § 12-121 and Rule 11(a)(1), arguing that this appeal was brought frivolously, unreasonably or without foundation. Because the Greifs are not the prevailing party, we decline to award the requested fees.

### IV.  CONCLUSION

The Greifs' Motion to enforce the Knudson-Vanderford Settlement and dismiss Knudson's claims is treated as a summary judgment motion. The Knudson Affidavit raises genuine issues of material fact concerning the validity of both alleged settlement agreements. Thus, we reverse district court's decision to grant the Greifs' Motion. Costs to Knudson.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**

---

[4] Once again, we strongly urge practitioners who reach a settlement after a lawsuit has been initiated to amend their pleadings to add in the alternative a count for breach of the settlement agreement. *See Mihalka*, 145 Idaho at 551, 181 P.3d at 477. The court can then hold an evidentiary hearing on the issues going to the formation of the new agreement and can decide credibility issues and disputed issues of fact.