**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 44543-2016**

| | | |
|---|---|---|
| **KEVIN SEWARD, an individual,** | ) | |
| | ) | **Boise, September 2017 Term** |
| **Plaintiff-Respondent,** | ) | |
| | ) | **Filed: September 19, 2018** |
| **v.** | ) | |
| | ) | **Karel A. Lehrman, Clerk** |
| **MUSICK AUCTION, LLC, an Idaho limited** | ) | |
| **liability company,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County.  Hon. Davis F. Vandervelde, District Judge.

The judgment of the district court is affirmed.

Pickens Cozakos, PA., Boise, for appellant. Shelly Cozakos argued.

Rossman Law Group, PLLC and Barnum Howell & Gunn, PLLC, Boise, for respondent.  Matthew Gunn argued.

_____

HORTON, Justice.

This appeal relates to a purported agreement resolving a lawsuit between Kevin Seward and Musick Auction, LLC ("Musick"). Seward claimed that the parties entered into a binding oral settlement agreement and he moved to enforce the agreement. The district court granted Seward's motion. Musick's appeal contends that the district court erred in several respects when it held that the parties had entered into a binding settlement agreement. We affirm.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Seward began working for Musick in August of 2014 and was terminated on February 5, 2015. Thereafter, Seward made a written demand for wages that he claimed to be owed. Musick disputed Seward's claim that he was an employee and asserted that Seward had been paid all sums owed to him as an independent contractor.

1

Seward filed a complaint on May, 8, 2015, in which he alleged that Musick violated the Wage Claim Act, Idaho Code section 45-601, *et seq.* The district court ordered the parties to mediate. Judge Stephen Dunn served as the mediator. Kimberly Williams represented Seward in the mediation and Musick, acting through its managing member, Roger Worley, was represented by Brian Webb. Following the mediation, Judge Dunn went into court with the parties and read the terms of the parties' agreement into the record. No court reporter was present. Because of a technical error—the audio was muted—the proceedings were not successfully recorded. Thus, the court minutes represent the only record of the proceedings. The minutes state, in pertinent part:

The Court noted the parties had reached a settlement agreement and stated the terms and conditions of the agreement for the record.

In answer to the Courts [sic] inquiry, each of the parties and their counsel concurred with the settlement agreement as set forth on the record by the Court.

The Court noted the settlement agreement entered into resolved the case and it would notify the assigned Judge of the same.

The Court directed Mr. Webb to submit necessary documents to dismiss the case, including a release.

Webb sent a draft settlement agreement and release to Williams for her review. The draft contained terms which Seward claims were not discussed during the mediation. These terms included a confidentiality clause, a stipulation that Seward had been an independent contractor rather than an employee, and a requirement that Seward's wife be a party to the agreement (collectively "the additional terms").[1] The draft resulted in an exchange of email between the parties' attorneys. As will be seen, the tenor of the discussions rapidly changed. The following is the exchange:

**Williams:** I received the proposed settlement agreement provided by your legal assistant. However, there are a few changes that need to be made before Mr. Seward can sign it. There are several items included that were not bargained for,

---

[1] The reference to "additional terms" does not mean that we have accepted Seward's position as an established fact before beginning our analysis of the issues presented by this appeal. Rather, we have elected to use the phrase as shorthand in describing the parties' dispute despite our awareness that it does not accurately reflect Musick's position in this appeal.

2

nor agreed upon during the mediation. As we did not receive this draft until after the two week period your client agreed to on record in the hearing conducted on October 28th, please provide a revised copy as soon as possible, but no later than noon on November 20, 2015.

1. Remove Hailey Seward's name from the agreement entirely, including the signature block.

2. Recital paragraph 1[2] change from "asserting they are entitled to" and replace with "asserting a claim for."

3. Agreement paragraph B,[3] change the date from November 12th to November 20, 2015.

4. Agreement paragraph C,[4] remove the last sentence.

5. Agreement paragraph F,[5] remove in its entirety.

Finally, please have the check made out to Rossman Law Group, PLLC in trust for Kevin Seward. Once the agreement is signed we will be happy to send our runner to your office to pick it up.

Feel free to contact me if you have any questions.

**Webb:** My client will not sign without F. Please ask your client to reconsider.

---

[2] The draft contained the following recital: "1. Seward filed a lawsuit in Canyon County, Idaho, Case #CV15-4118, on May 8, 2015, asserting they are entitled to unpaid wages from Musick Auction."

[3] This portion of the draft read: "**Payment.** Musick Auction will pay Seward the amount of $15,000.00 on or before November 12, 2015."

[4] This paragraph provided:

> C. **Not Admission.** This Agreement is entered into by the Parties to avoid the uncertainty, inconvenience and expense of further disputes on this matter, and shall not be construed to be an admission of the truth or correctness of any of the allegations of any Party of responsibility or liability of any other Party, nor be used in any proceeding as an admission of liability on the part of or concerning any Party. However, in the event proceedings are initiated against Musick Auction by a state or federal administrative or governmental agency, Seward shall acknowledge in any such proceedings that he was an independent contractor during his tenure with Musick Auction.

[5] The paragraph in question stated:

> F. **Confidentiality / Non-Disparagement.** The Parties agree that they will not disclose the terms of this Agreement with any individuals or third parties. Further, all Parties agree that hereafter they will not disparage any other Party or tend to impede their ability to do transact [sic] business of any kind.

3

**Williams:** That was not a term discussed at the mediation. If your client's position is that he is going to breach the settlement agreement, we can certainly contact Judge Dunn regarding how to proceed.

**Webb:** Part of the agreement [was] that Musick was going to put together a formal document. It was my client's understanding that the future documents would include a confidentiality provision, which is customary, as is other provisions that were not discussed in detail but that are customarily included in settlement agreements. Moreover, given that Hailey was allowed to participate and this is a CP state, she probably should sign the settlement agreement as well. I am not sure what Judge Dunn is going to do. If your client wishes to asset [sic] a claim for breach of the settlement agreement then Judge Dunn won't really be involved.

**Williams:** Yes, you were tasked with drafting the agreement pursuant to the terms discussed at mediation and on the record at the hearing. While certain provisions such as integration and counterpart signature clauses are standard language in these agreements, confidentiality is always a negotiated term. By no means can it be assumed to be a term of the agreement without being expressly negotiated. The fact that Hailey was at the mediation does not make her a party and there is no basis whatsoever for requiring her signature.

**Webb:** Kimberly - does your client really object to a confidentiality provision? My client will not require Hailey to sign if he will agree to it. Did Kevin tell you about his journal he left at Musick before he left? It seems that confidentiality is something he would want in this case.

**Williams:** Does your client have a copy of Mr. Seward's journal?
I am highly offended by your not-so-veiled threat to reveal personal information regarding my client's private life in order to extort an additional term which was not negotiated at the mediation. While I have no basis to expect better of your

4

client, this is highly improper behavior for a member of the bar to be participating in. The journal was in no way related to Mr. Seward's work for Musick Auction, and certainly is not related to Mr. Seward's litigation against Musick Auction.

My client does object to the confidentiality agreement, and you have no basis whatsoever to request that Mrs. Seward sign any settlement agreement based upon this litigation. The fact that Idaho is a community property state is the reason for the language in Paragraph A[6] of the settlement agreement.

Mr. Seward is prepared to sign the settlement agreement with the revisions sent to you previously. Please have the revised agreement to me by Wednesday, December 2nd, at 12:00 p.m. Otherwise we will have to move forward with the litigation of this matter.

Again, please have the check made out to Rossman Law Group, PLLC in trust for Kevin Seward.

**Webb:** Kim - while I understand why you may think I was extorting the situation, that was not my intent. I was merely trying to convey that, given the circumstances, and the lack of agreement to a confidentiality, it can only be supposed that your client intends to disparage mine, in which instance, one could be worried about whether there would be a response, and this would be a way he could prevent that (although that is not something I would condone, or my client for that matter). It was more for your client's peace of mind. A confidentiality provision would be good for both clients.

Additionally, my client is seeking advice from separate counsel. He and they have asked for an extension to tomorrow at noon to consider your demand. Although it is passed [sic] the noon deadline already, I would ask that you hold off until tomorrow before taking additional action in the event my client will agree.

Please advise.

---

[6] This provision in the draft provided:
> **Mutual Release.** Seward and Musick Auction, and any persons or entities claiming by, through or under their successors in interest, insurers, assigns, lien holders, members, or occupants, hereby fully, unequivocally and irrevocably releases and forever discharges each other from all claims included in or in any way related to the Subject Matter of this Agreement.

**Williams:** Thank you for the explanation. My client has no intention of disparaging Mr. Worley. We do agree to the extension.

**Webb:** Unfortunately, my client will not sign without a confidentiality agreement. Obviously, his position is that there was not a meeting of the minds on that issue. If your client won't agree to it, then please proceed as you have indicated. He will likely be proceeding with different counsel.

**Williams:** I have spoken with Mr. Seward, he will include a confidentiality agreement upon the following conditions.

First, the language in F needs to be amended as follows: "The Parties agree that they will not disclose the terms of this Agreement with any individuals or third parties, except tax advisors, or other professional consultants. Further, the Parties agree that hereafter they will not disparage any other Party or tend to impede their ability to transact business. As the Parties are currently business competitors in the same and/or similar business, and in the same geographic area, this clause does not restrict the Parties from regular competitive business practices in the running of their respective businesses.

Secondly, Mr. Seward would like an additional $10,000 in consideration for the confidentiality and non-disparagement term.

The signed agreement will be exchanged for a check made out to Rossman Law Group, PLLC in trust for Kevin Seward. This offer remains open until the close of business on Monday, December 7th.

On another matter, Mr. Seward has received in the mail an insurance check for Musick Auction in the amount of approximately $25,000. We can deliver this check at the same time the agreement and settlement check are exchanged. If your client would prefer other arrangements regarding the insurance check please let me know.

**Webb:** Kimberly - My client declines your offer. In addition, he just discovered that your client interfered with the negotiations on the Caldwell Auction. He

intends to pursue this claim personally against him. By the way, the reason the check was sent to him was because he represented himself as an "owner" on the application, and on multiple others' [sic] as well apparently.

**Williams:** Your client's claims of interference are clearly nothing more than an attempt to harass and intimidate Mr. Seward in the present matter. Mr. Seward has no concerns whatsoever about any alleged lawsuit which would certainly be baseless, frivolous and subject to sanctions pursuant to Idaho Code 12-123 and I.R.C.P. 11(a)(1). The former owner of Caldwell Auctions is willing to provide an affidavit that he spoke with Mr. Seward and Roger once just before Mr. Seward was fired by Roger, and that Roger never contacted him again regarding the purchase of his business. He will also state the [sic] he never had any intention of selling to Roger, and that he would not have sold his business to Mr. Seward if Mr. Seward had still been involved with Roger.

That being said, Mr. Seward would like to put the present matter to rest. He will sign the settlement agreement with all of the revisions we initially proposed and with the language of the confidentiality agreement being revised as provided in my December 3rd email below.

If we cannot come to terms, we will file a motion to enforce the settlement agreement on Wednesday, December 16th.

**Williams:** We are having difficulties with our email system. I am not sure if you received the [previous] correspondence which I attempted to send out last Friday, so I am resending now. Due to the potential delay in your receipt of the below, we are extending your response date to this Friday, December 18th.

**Webb:** I did not receive it. Let me take a look and talk with Roger. Will you send me a draft of what he will (is) agree(ing) to?

Thanks.

7

**Williams:** Changes to the settlement agreement as indicated in my November 18th email are as follows:

> 1. Remove Hailey Seward's name from the agreement entirely, including the signature block.
>
> 2. Recital paragraph 1 change from "asserting they are entitled to" and replace with "asserting a claim for."
>
> 3. Agreement paragraph B, change the date from November 12th to November 20, 2015.
>
> 4. Agreement paragraph C, remove the last sentence.

The changes to the confidentiality clause from my December 3rd email are as follows:

> Paragraph F needs to be amended as follows: "The Parties agree that they will not disclose the terms of this Agreement with any individuals or third parties, except tax advisors, or other professional consultants. Further, the Parties agree that hereafter they will not disparage any other Party or tend to impede their ability to transact business. As the Parties are currently business competitors in the same and/or similar business, and in the same geographic area, this clause does not restrict the Parties from regular competitive business practices in the running of their respective businesses.

With those changes Mr. Seward will sign the settlement agreement.

**Webb:** These changes are fine except my client will not agree unless Hailey signs as well.

**Williams:** She is not a party and there is no basis whatsoever for requiring her to sign. Your client's continued attempts to extort additional terms out of this matter are beyond contempt and our motion to compel will certainly include a motion for fees, and for interest for the delay beyond the two weeks the Judge required you to have this completed by.

**Webb:** Kim - she was present at the mediation, agreed to the terms, was present after hours in what the IT members of Musick believes was an effort to steal data, and from my client's perspective, was the reason things ended the way it did . . . and they are married. Should we have excluded her from mediation? Regardless, my client will not be agreeing without her signature. If you feel a need to move to "compel" signature, please proceed.

**Williams:** None of that changes the fact that she is not and never was a party to the wage claim which is the entire basis of the litigation in this matter. Her attendance at mediation has no bearing whatsoever on her signing an agreement. As the terms of the agreement were already made a matter of public record by Judge Dunn at the hearing your request for confidentiality is absurd to say the least with regards to anyone, and certainly with regards to a non-party.

**Webb:** Without addressing your argument on the reasonableness or validity of the additions, this could still nonetheless be resolved with what, is in reality, a minor change. I am holding the check in my office if your client wants this to end.

There were no further communications between the parties. Approximately five months later, Seward filed his Motion to Enforce Settlement Agreement. The motion was supported by an affidavit from his attorney which attached the foregoing email exchange and a copy of the court minutes.[7] In his accompanying brief, Seward argued that the parties reached a complete settlement of their claims during the mediation and that the parties intended the agreement to be final and binding. In opposition to the motion, Musick contended that the oral agreement was preliminary to a written agreement and that the additional terms were merely standard provisions that are routine and necessary parts of a settlement agreement.

Following a hearing at which Musick was represented by its new attorney, the district court granted Seward's motion. Judgment was entered on September 9, 2016, and Musick timely appealed.

---

[7] The affidavit also included notes prepared by Judge Dunn in his capacity as a mediator. The district court granted Musick's unobjected-to motion to strike the notes as privileged.

## II.    STANDARD OF REVIEW

This Court has frequently stated that "[a] motion for the enforcement of a settlement agreement is treated as a motion for summary judgment when no evidentiary hearing has been conducted." *Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 844–45, 419 P.3d 1139, 1143–44 (2018) (quoting *Vanderford Co., Inc. v. Knudson*, 150 Idaho 664, 671, 249 P.3d 857, 864 (2011)). We take this opportunity to clarify that different standards of review will apply to proceedings to enforce a settlement agreement, depending upon the procedural mechanism by which enforcement is sought.

A settlement agreement is a contract resolving the parties' underlying dispute and "stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally." *Budget Truck Sales*, 163 Idaho at 845, 419 P.3d at 1144 (quoting *Vanderford*, 150 Idaho at 672, 249 P.3d at 865). As such, a settlement agreement is enforceable through a contract action. However, a party seeking to enforce such an agreement "need not initiate a new civil lawsuit to enforce the settlement agreement." *Estate of Holland v. Metro. Prop. & Cas. Ins. Co.*, 153 Idaho 94, 100, 279 P.3d 80, 86 (2012) (quoting *Vanderford*, 150 Idaho at 670, 249 P.3d at 863). Instead, the party seeking to enforce the action may either amend the pleadings to assert a cause of action based upon the agreement (which we have deemed to be "the better practice") or move that the trial court enforce the agreement prior to dismissal of the underlying action. *Id*.

In this case, Seward moved for enforcement of the settlement agreement. Such a motion seeks specific performance of the settlement agreement or a declaration of the rights of the parties. As these claims for relief lie in equity, there is no right to jury trial. In *Estate of Holland*, this Court held that a motion to enforce the terms of a settlement agreement was "in the nature of a declaratory judgment," for which there is no right to a jury trial. *Id*. at 100, 279 P.3d at 86. We reaffirmed this holding in *Morgan v. New Sweden Irrigation District*, 160 Idaho 47, 368 P.3d 990 (2016), noting that "in *Estate of Holland . . .* this Court determined that in an action for declaratory judgment there was no right to a jury trial in order to determine the terms of a settlement agreement, which was properly an issue in equity." *Id*. at 52, 368 P.3d at 995; *see also Ada Cnty. Highway Dist. v. Total Success Investments, LLC*, 145 Idaho 360, 369, 179 P.3d 323, 332 (2008) (no right to jury trial on equitable claims). Other jurisdictions have concluded that a motion to enforce a prior settlement agreement is essentially a claim for specific enforcement,

10

thus equitable in nature, and not subject to the right of jury trial. *See e.g.*, *Ackerman v. Sobel Family P'ship, LLP*, 4 A.3d 288, 312 (Conn. 2010); *Adams v. Johns-Manville, Corp.*, 876 F.2d 702, 709–10 (9th Cir. 1989); *Willapa Trading Co., Inc. v. Muscanto, Inc.*, 727 P.2d 687, 692 (Wash. Ct. App. 1986). .

"A motion for the enforcement of a settlement agreement is treated as a motion for summary judgment . . . ." *Estate of Holland*, 153 Idaho at 100, 279 P.3d at 86 (2012) (quoting *Vanderford*, 150 Idaho at 671, 249 P.3d at 864). In cases where a jury trial right exists and has been timely demanded the standard of review which we apply requires us to "construe all disputed facts and make all reasonable inferences in favor of the nonmoving party." *Med. Recovery Servs., LLC v. Neumeier,* 163 Idaho 504, ___, 415 P.3d 372, 376 (2018) (citing *Sprinkler Irrigation Co. v. John Deere Ins.*, 139 Idaho 691, 695–96, 85 P.3d 667, 671–72 (2004)). If there has been no timely demand for a jury trial, or if that right is subsequently waived, or does not apply because the claim or defense lies in equity:

> the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. This Court freely reviews the entire record that was before the district court to determine whether either side was entitled to judgment as a matter of law and whether inferences drawn by the district court are reasonably supported by the record.

*Borley v. Smith*, 149 Idaho 171, 176–77, 233 P.3d 102, 107–08 (2010) (citations omitted).

As there is no right to a jury trial in connection with a motion to enforce a settlement agreement, we will apply this latter standard when reviewing the district court's order enforcing the settlement agreement.

### III.   ANALYSIS

Musick's appeal advances several arguments in support of its claim that the district court erred. For ease of analysis, we have elected to address the arguments in a different sequence than Musick has presented and to jointly consider two closely related arguments. Thus, we consider Musick's assertions that the district court: (1) improperly considered the court minutes when ruling on Seward's motion; (2) made impermissible credibility determinations when evaluating the evidence; and (3) incorrectly granted Seward's motion to enforce the purported settlement agreement after finding that there was an enforceable oral agreement between the parties. Seward asks that we award attorney fees on appeal. We will address these issues in turn.

11

**A. The district court did not err when it considered the court minutes when deciding Seward's motion.**

Musick contends that the district court erred by considering the court minutes when deciding Seward's motion because they are not an official record of the actual terms of the alleged agreement. Musick contends that it was error for the district court to consider the minutes because the Idaho Rules of Evidence required Seward to produce the actual recording made in court following the mediation. Musick cites Idaho Rule of Evidence 1002, which requires the original "[t]o prove the content of a writing, recording, or photograph." I.R.E. 1002. According to Musick, this rule required Seward to produce the original recording in order to prove that the parties reached an enforceable oral agreement.

Musick's claim that the court minutes were inadmissible is an objection raised for the first time on appeal. Generally, "[t]his Court will not consider objections to the admission of evidence that are not preserved in the record and that are raised for the first time on appeal." *PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 768, 291 P.3d 442, 451 (2012). The objecting party must timely object to the evidence or submit a motion to strike. *Phillips v. Erhart*, 151 Idaho 100, 105, 254 P.3d 1, 6 (2011). Here, Musick neither objected to the admission of the court minutes nor moved to strike them. Therefore, we will not consider Musick's arguments relating to Idaho Rule of Evidence 1002.[8]

**B. The district court did not make an improper credibility determination when it ruled on Seward's motion.**

"As a general rule, a trial court does not make findings of fact when deciding a motion for summary judgment because it cannot weigh credibility, must liberally construe the facts in favor of the non-moving party, and must draw all reasonable inferences from the facts in favor of the non-moving party." *Hilliard v. Murphy Land Co., LLC*, 158 Idaho 737, 744, 351 P.3d 1195, 1202 (2015) (citing *Beus v. Beus*, 151 Idaho 235, 238, 254 P.3d 1231, 1234 (2011)). "Although affidavits must set forth facts that would be admissible as evidence . . . it is not proper for the trial judge to assess the credibility of an affiant at the summary judgment stage when credibility can be tested in court before the trier of fact." *Baxter v. Craney*, 135 Idaho 166, 172, 16 P.3d 263, 269 (2000). "The burden of the plaintiff when faced with a motion for summary judgment, is not to persuade the judge that an issue will be decided in his favor at trial. Rather, he simply

---

[8] We observe that Musick would likely not have prevailed on this claim even if it had been properly preserved for appeal. We do not interpret Idaho Rule of Evidence 1002 as requiring production of the original version of something that never existed.

must present sufficient materials to show that there is a *triable* issue." *G & M Farms v. Funk Irr. Co.*, 119 Idaho 514, 524, 808 P.2d 851, 861 (1990) (emphasis original) (quoting *Earl v. Cryovac, a Div. of W.R. Grace Co.*, 115 Idaho 1087, 1093, 772 P.2d 725, 731 (Ct. App. 1989)).

Musick contends that the district court erred by comparing Williams' affidavits to Worley's affidavit and, after weighing all the evidence, finding that Williams' version of events was the more credible. The record does not support this claim.

Williams' affidavit testimony described particular events occurring—or not occurring—during mediation. She testified that the first discussion of written settlement documents occurred after the parties read the terms of their agreement into the record and Judge Dunn asked Musick's attorney to prepare the necessary documents for dismissal of the case. She identified the terms of the agreement that were read into the record: Seward would dismiss his lawsuit and Musick would pay him $15,000.00. She further testified that "each party acknowledge[d] the terms of the agreement on the record."

Worley's affidavit acknowledged that he had "agreed to some terms of a settlement agreement, such as the amount to be paid to [Seward]." However, Worley's affidavit is conspicuous for its absence of specificity as to the representations made to Judge Dunn when the parties' agreement was placed on the record. Instead, the affidavit is replete with statements reflecting Worley's subjective expectations. For example, his affidavit states:

> It was always my understanding that, following the mediation session, our respective attorneys would prepare a written settlement agreement, containing all the terms of a final and binding agreement. I further understood that I would have an opportunity to review the written agreement and execute it only if accurate and comprehensive.

Worley's affidavit is silent as to the basis for this understanding; more importantly, there is no indication that this understanding was the subject of an agreement with Seward or discussed on the record before Judge Dunn.

Worley's affidavit also states: "Following the mediation session, my attorney prepared a written agreement, containing essential terms that, in my opinion and belief, are necessary in order for there to be an agreement and I was not willing to have Musick Auction pay any money to the Plaintiff without these terms." Significantly, Worley's affidavit does not claim that these additional terms were the subject of agreement between the parties.

In short, although Worley's affidavit contains information relating to his subjective expectations of what would occur following the mediation and the terms that he believed were

13

necessary to protect Musick's interests, he simply did not contradict any statement contained in Williams' affidavits. Therefore, the district court's acceptance of Williams' affidavit testimony did not constitute an impermissible resolution of the affiants' credibility.[9]

**C. The district court did not err in its holding that there was an enforceable oral agreement between the parties.**

"For a contract to exist, a distinct understanding that is common to both parties is necessary." *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho 586, 592, 329 P.3d 368, 374 (2014). "A party's subjective, undisclosed intent is immaterial to the interpretation of a contract." *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 614, 167 P.3d 748, 751 (2006). Instead,

> the court will give force and effect to the words of the contract without regard to what the parties to the contract thought it meant or what they actually intended for it to mean. The court will not attempt to ascertain the actual mental processes of the parties in entering into the particular contract; rather the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest.

17 Am. Jur. 2d *Contracts* § 347 (2004). To arrive at the real intention of the parties, this Court "will consider the facts and circumstances out of which the contract arose, and will construe the contract in the light of such facts and circumstances." *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 136, 540 P.2d 792, 798 (1975) (internal quotations and citation omitted).

Musick challenges the district court's determination that the parties reached a valid settlement agreement in the mediation. Musick argues it anticipated that the oral agreement would be succeeded by a formal document that Musick's attorney would prepare. Musick further argues that the failed recording of the proceedings following the mediation means that the precise terms and conditions purportedly agreed to in mediation cannot be established. This, Musick asserts, presents a genuine issue of material fact whether or not the oral agreement was inclusive of all terms and conditions that would be contained in the final written document.

A settlement agreement "stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally." *Vanderford Co., Inc. v. Knudson*, 150 Idaho 664, 672, 249 P.3d 857, 865 (2011). "A contract must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of

---

[9] Musick also argues that the court minutes reflect that the "terms and conditions" of the agreement were placed on the record, while Williams' affidavit refers only to the "terms" of the agreement. Musick did not advance this argument at the summary judgment stage, perhaps because the weakness of this semantic argument is evident on its face.

being reduced to certainty." *Unifund CCR, LLC v. Lowe*, 159 Idaho 750, 753, 367 P.3d 145, 148 (2016). A contract can only exist when there is an understanding common to both parties. *Gray v. Tri-Way Const. Servs., Inc.*, 147 Idaho 378, 384, 210 P.3d 63, 69 (2009). In other words, "formation of a valid contract requires a meeting of the minds as evidenced by a manifestation of mutual intent to contract." *Fed. Nat'l Mortg. Ass'n v. Hafer*, 158 Idaho 694, 701–02, 351 P.3d 622, 629–30 (2015). Oral agreements for settlement are generally enforceable as contracts unless the subject matter falls within the proscription of the statute of frauds. *McColm-Traska v. Baker*, 139 Idaho 948, 952, 88 P.3d 767, 771 (2004). When outside the statute of frauds, "[o]ral stipulations of the parties in the presence of the court are generally held to be binding, especially when acted upon or entered on the court records . . . ." *Kohring v. Roberts*, 137 Idaho 94, 99, 44 P.3d 1149, 1154 (2002) (citation omitted). "Whether the parties to an oral agreement or stipulation become bound prior to the drafting and execution of a contemplated formal writing is largely a question of intent." *Id.* The intent of the parties to contract is determined by the surrounding facts and circumstances. *Bosen*, 144 Idaho at 614, 167 P.3d at 751. The best evidence to support the parties' intent to contract is to look at the words of counsel and their clients. *First Sec. Bank of Idaho v. Hansen*, 107 Idaho 472, 477, 690 P.2d 927, 932 (1984).

Due to the error in recording the proceedings that took place on the record before Judge Dunn, the only evidence relating to the parties' intent are the court minutes, the emails exchanged between counsel for the parties, and the affidavits subsequently submitted by the parties. The court minutes reflect that the parties reached a final agreement. Judge Dunn inquired of each party whether they had reached an agreement and whether they agreed with the terms read into the record.[10] The minutes reflect that "each of the parties and their counsel concurred with the settlement agreement as set forth on the record by the Court." Based upon the parties' agreement, Judge Dunn directed Musick's attorney to submit the necessary documents to dismiss the case. The minutes contain nothing to indicate that additional contractual terms were to be worked out between the parties. To the contrary, the minutes reflect Judge Dunn's view that "the settlement agreement entered into resolved the case and [he] would notify the assigned Judge of the same."

---

[10] During its oral argument, Musick argued that Judge Dunn was acting in his role as a mediator when he took the bench and read the terms of the agreement into the record. We disagree. There is nothing to suggest Judge Dunn was acting as anything other than a court officer at this time. In any event, we will not decide an appeal based upon issues advanced for the first time during oral argument. *See, e.g.*, *Mac Tools, Inc. v. Griffin*, 126 Idaho 193, 198, 879 P.2d 1126, 1131 (1994).

The exchange of emails between counsel for the parties set forth in the introduction to this opinion and Worley's affidavit testimony give rise to only two reasonable interpretations: (1) at the time the parties and their attorneys appeared before Judge Dunn on the record, Worley harbored a subjective expectation that the additional terms were to be incorporated into a final written agreement; or (2) following that appearance, Worley decided that a confidentiality clause was necessary and Seward's wife should also be a party to the agreement. Neither of these potential explanations is a ground for avoiding summary judgment.

As to the first interpretation of the evidence before the district court, "[t]he existence and nature of [an] offer is judged by its objective manifestations, not by any uncommunicated beliefs, mental reservations, or subjective interpretations or intentions of the offeror." *Hafer*, 158 Idaho at 702, 351 P.3d at 630 (citation and internal quotations omitted). "Whether there was a meeting of the minds is an objective inquiry that does not focus on the subjective beliefs or intentions of [the parties]." *Id.* at 704, 351 P.3d at 632. Under the first scenario that the evidence suggests, it is evident that the provisions Worley understood to be "customary" were uncommunicated beliefs or subjective intentions.

Under the second scenario suggested by the evidence before the district court, we first observe the obvious: a party may not avoid the duties imposed under the terms of a valid and enforceable contract simply because that party subsequently decides that additional terms may be desirable. This requires us to consider whether the terms set forth before Judge Dunn constituted a valid and enforceable contract. "A response to an offer amounts to an acceptance if an objective, reasonable person is justified in understanding that a fully enforceable contract has been made, even if the offeree subjectively does not intend to be legally bound." *Justad v. Ward*, 147 Idaho 509, 512, 211 P.3d 118, 121 (2009) (quoting 17A Am. Jur. 2d *Contracts* § 91 (2d ed. 2008)). This objective standard takes into account the facts and circumstances, "including what the offeree said, wrote, or did and the transactional context in which the offeree verbalized or acted." *Id*.

Both Williams and Worley acknowledge that Seward agreed to dismiss his action in consideration of Musick's promise to pay him $15,000. This exchange of promises was sufficient to create an enforceable contract.

For the foregoing reasons, we hold that the district court considered all relevant evidence[11] and correctly concluded there was a binding oral agreement reached at the conclusion of mediation.

**D. Seward is entitled to attorney fees on appeal.**

Seward requests attorney fees pursuant to Idaho Code section 12-121 and Idaho Appellate Rule 41. An award of attorney fees under Idaho Code section 12-121 is not a matter of right to the prevailing party, but is appropriate only when this Court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. *Pocatello Hosp., LLC v. Quail Ridge Med. Investor, LLC*, 157 Idaho 732, 742, 339 P.3d 1136, 1146 (2014). This is such a case. Therefore, we award attorney fees on appeal to Seward.

## IV. CONCLUSION

We affirm the district court's grant of summary judgment and award Seward attorney fees and costs on appeal.

Chief Justice BURDICK, Justice BRODY, and Justice Pro Tem HIPPLER **CONCUR.** JONES, J. sat, but did not participate due to his untimely death.

---

[11] Musick argues that Williams' affidavit should not have been considered because the Idaho Rules of Professional Conduct do not permit an attorney to act as advocate and witness in the same case. However, Musick did not advance this objection before the district court. Therefore, we will not further address this issue. *See PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 769, 291 P.3d 442, 452 (2012).