**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46638**

BRUNOBUILT, INC., an Idaho corporation, )
)
   Plaintiff-Appellant, )
)    **Boise, December 2019 Term**
v. )
)    **Opinion Filed: February 5, 2020**
STRATA, INC.; CHRIS M. COMSTOCK; H. )
ROBERT HOWARD; MICHAEL G. )    **Karen A. Lehrman, Clerk**
WOODWORTH, )
)
   Defendants-Respondents )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Steven Hippler, District Judge.

The judgment of the district court is <u>affirmed</u>. No attorney fees are awarded on appeal. Costs are <u>awarded</u> to the Strata Defendants as the prevailing party.

McConnell Wagner Sykes & Stacey, PLLC, Boise, attorneys for Appellant. Rick L. Stacey and Chad M. Nicholson argued.

Duke, Scanlan & Hall, PLLC, Boise, attorneys for Respondent. Kevin A. Griffiths argued.

---

BEVAN, Justice

## I. NATURE OF THE CASE

BrunoBuilt, Inc., ("BrunoBuilt") appeals a district court's dismissal of its claims against Strata, Inc. ("Strata"), Chris M. Comstock, H. Robert Howard, and Michael G. Woodworth (collectively "the Strata Defendants"). BrunoBuilt filed a professional negligence action against the Strata Defendants alleging that when the Strata Defendants rendered engineering services for the Terra Nativa Subdivision they failed to identify a pre-existing landslide and negligently failed to recommend construction of infrastructure that would stabilize and prevent further landslides within the Subdivision. A home BrunoBuilt had contracted to build and the lot on which the dwelling was located were allegedly damaged as a result. The district court dismissed BrunoBuilt's claims after holding that the parties had entered into an enforceable settlement

1

agreement, or alternatively, that summary judgment was warranted in favor of the Strata Defendants based on the economic loss rule. We affirm the district court judgment because the parties entered into an enforceable settlement agreement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1992, owners of land in the Boise foothills began developing a multiple phase subdivision that would ultimately become known as the Terra Nativa Subdivision ("Subdivision"). The developers retained Strata to perform geotechnical engineering services throughout the development of the Subdivision. The current matter arises from earth movement affecting property located at Lot 16, also known as 238 N. Alto Via Court ("Lot 16") in the Subdivision. Amy and William Dempsey purchased Lot 16 in 2014 and signed a contract with BrunoBuilt to construct a home. Pursuant to the contract, the Dempseys quitclaimed Lot 16 to BrunoBuilt to construct a home, and upon completion BrunoBuilt was to re-convey the lot to the Dempseys in exchange for the contract price. Prior to commencing construction on the Dempsey home, BrunoBuilt built a residence on neighboring property down the street for Paul and Becky Rowan.

Around February 2016, portions of the land in the Subdivision began to slide. In February and March 2016, final building inspections were performed in anticipation of securing a certificate of occupancy from the City. The home BrunoBuilt constructed for the Dempseys on Lot 16 passed all the final building inspections; yet, sometime between April and June of 2016, the slide became noticeable within Lot 16 with visible cracking in the front yard. The house itself was not damaged by the earth movement, but all utilities, highway district, and fire department services in the area were terminated. As a result, the City withheld issuing a certificate of occupancy for the house on Lot 16. Unable to occupy their home, the Dempseys refused to pay under the contract and BrunoBuilt retained ownership of Lot 16.[1]

Predictably, the ground displacement within the Subdivision resulted in several lawsuits. On October 6, 2016, the Rowans sent BrunoBuilt a demand letter under Idaho's Notice and Opportunity to Repair Act ("NORA") for the damage occurring to their home on Alto Via Court. BrunoBuilt tendered the NORA notice to Strata, demanding that Strata defend and indemnify

---

[1] BrunoBuilt has filed a separate cause of action against the Dempseys for breach of contract in *BrunoBuilt, Inc. v. Dempsey*, Ada County Case No. CV01-17-23686.

2

BrunoBuilt with respect to the Rowans' claim; however, Strata rejected BrunoBuilt's tender based on a contract that was executed between Strata and BrunoBuilt for the Rowan project. The Rowan damages arose from the same earth movement that damaged Lot 16, both of which were the subject of a separate action against the Strata Defendants, *Sericati, et al. v. Strata, Inc., et al.*, Ada County Case No. CV OC 16-09068 (the "*Sericati* case").

On December 19, 2016, BrunoBuilt filed another action, *BrunoBuilt v. Kleinfelder, et al.*, Ada County Case No. CV01-16-22915 (the "*Kleinfelder* case"). In the *Kleinfelder* case, Brunobuilt named several individuals and entities involved in the development of the Subdivision, including the Strata Defendants. BrunoBuilt did not serve the Strata Defendants at that time because the parties were engaged in settlement discussions.

On January 3, 2017, counsel for the Strata Defendants, Kevin Scanlan, met with counsel for BrunoBuilt, Wyatt Johnson, to discuss potential dismissal of the claims against the Strata Defendants in the *Kleinfelder* case. Scanlan proposed that if BrunoBuilt would agree to dismiss its pending claims against the Strata Defendants in the *Kleinfelder* case, the Strata Defendants would negotiate with the Rowans in the *Sericati* case to secure a covenant not to sue, by which the Rowans would agree not to sue BrunoBuilt for any landslide damage caused to their home. In a declaration, Johnson testified that Scanlan made it clear that the Strata Defendants were not proposing any payment to BrunoBuilt for damages BrunoBuilt had sustained as a result of the 2016 landslide (which damages were sustained in connection with the agreement between the Dempseys and BrunoBuilt). Instead, the sole consideration the Strata Defendants were offering in exchange for BrunoBuilt's agreement to dismiss its pending claims against the Strata Defendants was an agreement by the Strata Defendants to secure a covenant from the Rowans that they would not sue BrunoBuilt for the landslide damages caused to their home. Johnson told Scanlan he would discuss the Strata Defendants' settlement offer with his client and get back to him. Between January 3, 2017, and January 10, 2017, Scanlan negotiated with counsel for the Rowans regarding including the covenant not to sue in the settlement of the *Sericati* case and with Johnson regarding settlement of the *Kleinfelder* case.

On January 5, 2017, Scanlan called Johnson to ask about the status of the offer. Johnson informed Scanlan that BrunoBuilt's principal, Robert Bruno, was still considering it. Scanlan gave Johnson until January 9 to accept. During the call, Johnson and Scanlan also discussed (1)

3

whether BrunoBuilt would be willing to provide a *Pierringer*[2] release to the Strata Defendants in the *Kleinfelder* case, through which it would only dismiss the Strata Defendants and maintain its claims against the other defendants, or (2) whether it would dismiss the entire case. Johnson advised Scanlan he would discuss the *Pierringer* release option with his client and get back to him on whether his client would agree to the proposal.

On January 9, 2017, during a phone call, Johnson informed Scanlan that BrunoBuilt would be willing to dismiss its claims against the Strata Defendants in exchange for a release from the Rowans, but BrunoBuilt required that it have the direct and independent right to enforce any covenant not to sue that the Rowans might give to the Strata Defendants in the *Sericati* case. Johnson specified that any settlement between the Strata Defendants and BrunoBuilt had to be conditioned on the Strata Defendants securing a covenant not to sue signed by the Rowans that communicated that BrunoBuilt was an intended third-party beneficiary of that covenant. Because BrunoBuilt was not privy to any confidential settlement negotiations that the Strata Defendants were purportedly having with the Rowans and the other homeowner plaintiffs in the *Sericati* case, Johnson explained it was important that BrunoBuilt have something in writing signed by the Rowans it could rely on if the Rowans tried to sue BrunoBuilt for their landslide damage. Johnson stated that Scanlan seemed reluctant to agree to BrunoBuilt's insistence that it be made an express third-party beneficiary of any covenant not to sue that the Rowans may sign in the *Sericati* case.

On January 10, 2017, Scanlan and Johnson spoke again, with the conversation centering on whether any settlement agreement reached between the parties would contain a *Pierringer* release from BrunoBuilt to the Strata Defendants.

On January 12, 2017, a confidential release of all claims and indemnity agreement was executed between the plaintiffs in the *Sericati* case and the Strata Defendants. A provision in the agreement was the Rowans' covenant not to sue BrunoBuilt; however, Scanlan did not inform Johnson or BrunoBuilt that the *Sericati* settlement agreement had been signed at that time.

---

[2] A "*Pierringer*-type" release allows a plaintiff to enter into a settlement with one or more defendants while reserving the balance of the plaintiff's cause of action against one or more nonsettling defendants. The name derives from the Wisconsin Supreme Court's approval of this type of release in the 1963 case of *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963). As we have recognized, "[i]n a "*Pierringer*-type" release, a plaintiff credits and satisfies the total amount of damages of the settling defendant and agrees to discharge the pro rata share of that defendant's damages from the total claims against any nonsettling parties." *Truck Ins. Exch. v. Bishara*, 128 Idaho 550, 555, 916 P.2d 1275, 1280 (1996) (citing *Pierringer*).

4

On January 20, 2017, Scanlan called Johnson to ask about BrunoBuilt's position on the settlement terms the Strata Defendants had proposed. Johnson informed Scanlan that he had spoken to his client and BrunoBuilt would agree to provide the Strata Defendants with a *Pierringer* release.

On February 9, 2017, Scanlan provided Johnson with a draft release agreement in which the claims against the Strata Defendants would be dismissed with prejudice in exchange for the Rowan covenant. Upon reviewing the release, Johnson noted that although there was a passing reference to the covenant not to sue executed by the Rowans in favor of BrunoBuilt, the express language was not included nor was a copy of the covenant provided to Johnson. Johnson also pointed out that the draft contained a confidentiality provision, which had not been discussed by the parties. Johnson described this as a material term that he and his client had not agreed to.

On March 1, 2017, Johnson informed Scanlan that BrunoBuilt would not sign the draft agreement because it did not reflect the terms counsel had discussed. Johnson also told Scanlan that BrunoBuilt believed the Strata Defendants failed to deliver on its promise to provide BrunoBuilt with a written, signed covenant not to sue from the Rowans.

On March 3, 2017, Scanlan sent Johnson a letter demanding that BrunoBuilt execute the draft release agreement and dismiss the Strata Defendants from the *Kleinfelder* case. Scanlan summarized the parties' negotiations as follows:

> [BrunoBuilt] would be amenable to either dismissal of the [*Kleinfelder* case] in its entirety or execution of a *Pierringer* release in favor of the Strata Defendants in exchange for the Strata Defendants securing a covenant not to sue BrunoBuilt from Paul and Becky Rowan . . . . Consistent with this agreement, the Strata Defendants secured a covenant not to sue from the Rowans, which specifically calls out claims that the Rowans would have against BrunoBuilt on the basis of BrunoBuilt's construction of the Rowan home located at 186 N. Alto Via Court.

Scanlan then included the purported relevant language of the release from the *Sericati* case:

> C.     Strata, Inc., through its employees, including, but not limited to, Michael Woodworth, provided site-specific geotechnical engineering services for the homes located at 289 N. Alto Via Ct., Boise, Idaho, owned by Matthew and Stacy Sericati; 241 N. Alto Via Ct., Boise, Idaho, owned by Paul and Becky Rowan; 186 N. Alto Via Ct., Boise, Idaho, owned by Ross Lamm and Leslie Preston; and 205 N. Alto Via Ct., Boise, Idaho, owned by Eric and Tiffany Rossman in the 2012 and 2013 timeframe pursuant to contracts with homebuilders and engineers, including, but not limited to, Brunobuilt, Inc.; Roth Construction, Inc.; Shadow

Mountain Homes, Inc.; Northern Construction; and Briggs Engineering, Inc. (hereinafter referred to as "Builders").

. . .

1.5     Plaintiffs further agree that they shall not institute any suit or other legal actions, or otherwise assert any claims, against Builders based upon or arising out of the events as set forth in the Recitals above and shall withdraw or dismiss any claims, demands, or causes of action previously asserted against Builders, including, but not limited to, the October 6, 2016, demand made by Paul and Becky Rowan to Robert Bruno and Brunobuilt, Inc.

Scanlan gave BrunoBuilt until March 10, 2017, to execute the settlement agreement.

On March 9, 2017, Johnson emailed Scanlan, stating "[i]t was very helpfu[l] to have the language the Rowans agreed to" and conveying that BrunoBuilt was "ready to proceed to complete [the] settlement process." Even so, Johnson requested that the release contain a mutual release of claims as opposed to a release solely of the Strata Defendants by BrunoBuilt.

On March 14, 2017, Scanlan called Johnson to inform him that Strata would not agree to a mutual release of claims. Johnson told Scanlan he would need to consult with Mr. Bruno to see if that would be a deal-breaker. Johnson followed up with an email to Scanlan and advised him that his client would insist on a mutual release from the Strata Defendants. Johnson also claimed that BrunoBuilt was no longer interested in providing the Strata Defendants with a *Pierringer* release.

Months later, on May 10, 2017, Scanlan's associate, Kevin Griffiths, emailed a revised settlement agreement to Johnson, which included a mutual release, and still included BrunoBuilt giving the Strata Defendants a *Pierringer* release. On June 9, 2017, Griffiths followed up about the status of the May draft agreement. On June 14, 2017, Johnson responded that he was trying to get Mr. Bruno, "chased down for signature." On July 31, 2017, Griffiths followed up again, asking Johnson "Where do we stand on getting Mr. Bruno's signature on the release agreement?" BrunoBuilt never signed the draft release agreement.

On August 2, 2017, BrunoBuilt's new counsel, Christine Salmi, sent Scanlan a letter informing him in considerable detail that no settlement agreement had been achieved and that the draft release was not a valid or enforceable contract. The Strata Defendants then moved to dismiss for failure to effectuate timely service of process, which the district court granted, dismissing the Strata Defendants without prejudice.

6

On September 19, 2017, BrunoBuilt filed a new complaint against the Strata Defendants, Ada County Case No. CV01-17-17395 (the "*Strata* case"), alleging professional negligence and breach of third-party beneficiary contract.[3] Strata was timely served with the new complaint before the expiration of the service deadline.

On April 5, 2018, the Strata Defendants moved to enforce settlement, or alternatively, for summary judgment based on the applicable statutes of limitations and the economic loss doctrine. The parties appeared for argument on May 15, 2018. On July 11, 2018, the district court issued its memorandum decision and order granting the Strata Defendants' motion. The district court held that the undisputed facts in the record revealed that by January 20—prior to circulation of the proposed release documents—the parties reached an enforceable agreement that BrunoBuilt would provide the Strata Defendants with a *Pierringer* release in exchange for the Strata Defendants obtaining a covenant not to sue from the Rowans specific to BrunoBuilt. BrunoBuilt later proposed a single modification in the form of a mutual release, which was accepted by the Strata Defendants.

Alternatively, the court found that BrunoBuilt's claims against the Strata Defendants were barred by the applicable statutes of limitations and repose, Idaho Code sections 5-219(4) and 5-241(a). The court also held that BrunoBuilt's claims were barred by the economic loss doctrine because they were not based on rendition of negligent services; specifically, BrunoBuilt's damages were economic losses flowing from the Dempsey contract, which were not recoverable under the economic loss rule.

On September 4, 2018, the district court signed an order instructing the parties to exchange mutual releases as contemplated in the settlement agreement, with BrunoBuilt providing a *Pierringer* release, and the Strata Defendants providing BrunoBuilt with a copy of the covenant not to sue executed by the Rowans. The parties were to jointly notify the court when the exchanges were complete, at which point the court would enter judgment dismissing the claims with prejudice. The parties did not exchange mutual releases and on September 18, 2018, BrunoBuilt filed an objection to entry of judgment.

Also on September 18, 2018, BrunoBuilt moved to reconsider. The district court upheld its prior decision but withdrew its findings on the timeliness issue based on its rulings on the

---

[3] At a summary judgment hearing BrunoBuilt abandoned its third-party beneficiary claim due to a lack of standing.

motion to enforce the settlement agreement and the economic loss theory. BrunoBuilt appealed. The appeal was conditionally dismissed for lack of a final judgment. On January 10, 2019, the district court entered a judgment dismissing BrunoBuilt's claims against the Strata Defendants with prejudice and BrunoBuilt filed an amended notice of appeal.

### III. STANDARD OF REVIEW

#### a. Motion to Enforce Settlement Agreement

A motion to enforce a settlement agreement is treated as a motion for summary judgment when no evidentiary hearing has been conducted. *Vanderford Co., Inc. v. Knudson*, 150 Idaho 664, 671, 249 P.3d 857, 864 (2011) (citing *Ogden v. Griffith*, 149 Idaho 489, 492 n. 1, 236 P.3d 1249, 1252 n. 1 (2010)). In an appeal from an order of summary judgment, this Court's standard of review is "the same as the standard used by the trial court in ruling on a motion for summary judgment." *Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 846, 419 P.3d 1139, 1144 (2018) (quoting *Holdaway v. Broulim's Supermarket*, 158 Idaho 606, 610, 349 P.3d 1197, 1201 (2015)). Thus, "if the movant shows there is no genuine dispute as to any material fact . . . the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). Moreover, in cases to enforce a settlement agreement,

> the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. This Court freely reviews the entire record that was before the district court to determine whether either side was entitled to judgment as a matter of law and whether inferences drawn by the district court are reasonably supported by the record.

*Seward v. Musick Auction, LLC*, 164 Idaho 149, 156, 426 P.3d 1249, 1256 (2018) (citation omitted).

#### b. Motion to Reconsider

On a motion for reconsideration, the district court "must consider any new admissible evidence or authority bearing on the correctness of an interlocutory order . . . . [But the motion] need not be supported by any new evidence or authority." *Jackson v. Crow*, 164 Idaho 806, 811, 436 P.3d 627, 632 (2019) (quoting *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012)). The district court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered. *Id*. "[W]hen the district court grants summary judgment and then denies a motion for reconsideration, this Court must determine

whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id*. (quoting *Idaho First Bank v. Bridges*, 164 Idaho 178, 186, 426 P.3d 1278, 1286 (2018)).

## IV. ANALYSIS

**A.**    **The district court properly held that the parties reached an enforceable settlement agreement.**

BrunoBuilt argues the district court erred in dismissing its claims because there were disputed facts at the time the district court determined that an agreement was formed. BrunoBuilt maintains there was no "meeting of the minds" on whether the covenant not to sue which the Rowans were to execute would expressly identify BrunoBuilt as an intended third-party beneficiary, whether the executed covenant not to sue would be provided to BrunoBuilt, and whether BrunoBuilt had agreed to a *Pierringer* release.

"A settlement agreement 'stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally.'" *Vanderford*, 150 Idaho at 672, 249 P.3d at 865 (quoting *Wilson v. Bogert*, 81 Idaho 535, 542, 347 P.2d 341, 345 (1959). "A contract must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Id*. (quoting *Giacobbi Square v. PEK Corp*., 105 Idaho 346, 348, 670 P.2d 51, 53 (1983)). "Whether the parties to an oral agreement or stipulation become bound prior to the drafting and execution of a contemplated formal writing is largely a question of intent." *Id*. (quoting *Kohring v. Robertson*, 137 Idaho 94, 99, 44 P.3d 1149, 1154 (2002)).

"Generally the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of facts." *Id.* (quoting *Shields & Co. v. Green*, 100 Idaho 879, 882, 606 P.2d 983, 986 (1980)). "The best evidence to support the parties' intent [relative to a settlement agreement] is to look at the words of counsel and their clients." *Seward*, 164 Idaho at 159, 426 P.3d at 1259 (citing *First Sec. Bank of Idaho v. Hansen*, 107 Idaho 472, 477, 690 P.2d 927, 932 (1984)). "Whether there was a meeting of the minds is an objective inquiry that does not focus on the subjective beliefs or intentions of [the parties]." *Id.*

"No enforceable contract comes into being when parties leave a material term for future negotiations, creating a mere agreement to agree." *Spokane Structures, Inc. v. Equitable Inv., LLC*, 148 Idaho 616, 621, 226 P.3d 1263, 1268 (2010) (quoting *Maroun v. Wyreless Sys., Inc*., 141 Idaho 604, 614, 114 P.3d 974, 984 (2005)). An oral agreement is valid if the written draft is

9

viewed by the parties as a mere record; the oral agreement is not valid if the parties view the written draft as a consummation of the negotiation. *Thompson v. Pike*, 122 Idaho 690, 696, 838 P.2d 293, 299 (1992) (citing *Elliott v. Pope*, 42 Idaho 505, 510–11, 247 P. 796, 797 (1926)).

This Court recently clarified the standards applicable to settlement enforcement proceedings in *Seward v. Musick Auction, LLC*. There, Seward and his former employer, Musick Auction, LLC, ("Musick") agreed on terms of a settlement agreement at a mediation, however, the terms of the agreement were not successfully recorded because of a technical error. *Id*. at 151, 426 P.3d at 1251. When Seward later received a draft of the agreement he alleged it contained additional terms not discussed during the mediation including: a confidentiality clause, a stipulation that Seward had been an independent contractor rather than an employee, and a requirement that Seward's wife be a party to the agreement. *Id*. at 152, 426 P.3d at 1252. The attorneys later entered into further discussions but could not come to an agreement on the additional terms. Seward filed a motion to enforce the original settlement agreement, which the district court granted. *Id*. at 155, 426 P.3d at 1255.

On appeal, Musick challenged the district court's determination that the parties reached a valid settlement agreement at the mediation. *Id*. at 158, 426 P.3d at 1258. Musick claimed that it expected that the oral agreement would be succeeded by a formal document that its attorney would prepare and that a genuine issue of material fact existed as to whether the oral agreement was inclusive of all the terms and conditions because the recording of the mediation settlement terms failed. *Id*. This Court held that the exchange of emails between counsel and affidavit testimony led to only two interpretations: (1) when the parties and their attorneys appeared for mediation, Musick's counsel harbored a subjective expectation that the additional terms were to be incorporated into a final written agreement; or (2) following that appearance, Musick's attorney decided that a confidentiality clause was necessary and Seward's wife should also be a party to the agreement. *Id*. at 159, 426 P.3d at 1259. The Court held that neither explanation could defeat summary judgment. *Id*. Under the first scenario, the Court held "[t]he existence and nature of [an] offer is judged by its objective manifestations, not by any uncommunicated beliefs, mental reservations, or subjective interpretations or intentions of the offeror," and the provisions suggested by Musick's attorney were "uncommunicated beliefs or subjective intentions." *Id*. (internal citation omitted). As for the second interpretation, the Court observed "a party may not avoid the duties imposed under the terms of a valid and enforceable contract simply because that

10

party subsequently decides that additional terms may be desirable." *Id*. at 159–60, 426 P.3d at 1259–60. In considering whether the terms constituted a valid and enforceable contract, the Court recognized:

> "A response to an offer amounts to an acceptance if an objective, reasonable person is justified in understanding that a fully enforceable contract has been made, even if the offeree subjectively does not intend to be legally bound." *Justad v. Ward*, 147 Idaho 509, 512, 211 P.3d 118, 121 (2009) (quoting 17A Am. Jur. 2d *Contracts* § 91 (2d ed. 2008)). This objective standard takes into account the facts and circumstances, "including what the offeree said, wrote, or did and the transactional context in which the offeree verbalized or acted." *Id*.

*Id*. at 160, 426 P.3d at 1260. When the Court looked at the terms set forth during mediation, both attorneys acknowledged that Seward agreed to dismiss his action in consideration of Musick's promise to pay him $15,000. *Id*. The Court held that this exchange of promises was sufficient to create an enforceable contract. *Id*.

Here, the district court determined that the parties reached an enforceable settlement agreement in which the Strata Defendants would provide BrunoBuilt with a covenant not to sue executed by the Rowans, and in exchange, BrunoBuilt would provide the Strata Defendants with a *Pierringer* release. BrunoBuilt later proposed a single modification in the form of a mutual release, which was accepted by the Strata Defendants. On appeal, BrunoBuilt claims that the district court erred in concluding an enforceable settlement agreement was ever formed.

1. *The inferences made by the district court are reasonable and supported by the record.*

BrunoBuilt claims that the district court made two improper inferences in concluding that an enforceable settlement agreement had been reached. "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Budget Truck Sales*, 163 Idaho at 846, 419 P.3d at 1144. This Court freely reviews the entire record before the district court to determine whether either side was entitled to judgment as a matter of law and whether inferences drawn by the district court are reasonably supported by the record. *Seward*, 164 Idaho at 156, 426 P.3d at 1256.

It is undisputed that the consideration offered by the Strata Defendants was that they would "seek to secure a covenant not to sue BrunoBuilt" from the Rowans as part of the settlement in the *Sericati* case. The district court concluded the most reasonable inference to be drawn was that the Rowans' covenant would be specific to BrunoBuilt. BrunoBuilt argues that

11

this inference was erroneous based on Scanlan's reluctance to agree that BrunoBuilt be made an express-third-party beneficiary. This argument lacks merit seeing as BrunoBuilt was expressly named: the Rowans agreed "Plaintiffs further agree that they shall not institute any suit or other legal actions, or otherwise assert any claims, against [BrunoBuilt] based upon or arising out of the events as set forth in the Recitals above and shall withdraw or dismiss any claims, demands, or causes of action previously asserted against [BrunoBuilt], *including, but not limited to, the October 6, 2016, demand made by Paul and Becky Rowan to Robert Bruno and Brunobuilt, Inc.*"

Second, BrunoBuilt argues the court improperly concluded that when Johnson stated he was "trying to get [Robert Bruno] chased down for signature" it was reasonable to infer that the May draft agreement prepared by the Strata Defendants was an accurate statement of the terms reached. The district court highlighted that Johnson never expressed any areas of concern with the May draft or suggested that it was unacceptable. BrunoBuilt asserts it was equally reasonable that Johnson had not analyzed the contract in detail but would do so when he sat down with his client to review the agreement and sign it, to the extent that it accurately reflected the parties' agreed-upon-terms. Even if we accept BrunoBuilt's argument, it does not impact the issues before us on appeal. We are not considering whether the parties ever had a *written* agreement that accurately reflected the agreed-upon terms; rather, we are resolving whether the district court properly concluded when, and if, the parties agreed to the material terms of an agreement. While the specific terms are analyzed in more detail below, BrunoBuilt's proposed inference suggests that the parties had "agreed-upon-terms" by the time Johnson received the May draft agreement.

### 2. Covenant not to sue

In the original January 3, 2017, offer, Scanlan stated that in exchange for dismissal: "The Strata Defendants would seek to secure a covenant not to sue BrunoBuilt from the Rowans as part of the settlement of the *Sericati* action." On January 9, 2017, the parties discussed the offer during a phone call and Johnson advised Scanlan: "BrunoBuilt would be willing to dismiss its claims against [the Strata Defendants] in exchange for a release from the Rowans, but BrunoBuilt required that it have the direct and independent right to enforce any covenant not to sue that the Rowans might give to [the Strata Defendants] in the *Sericati* action." The district court found that this constituted acceptance of Scanlan's original offer.

On appeal, BrunoBuilt argues that its demand that there be a provision that expressly identified BrunoBuilt in a covenant not to sue was a counteroffer. BrunoBuilt alleges that in the January 9, 2017, "acceptance" Johnson introduced at least one new term that Scanlan did not immediately agree to, constituting a rejection of Scanlan's January 3, 2017, offer. "An acceptance of an offer, to be effectual, must be identical with the offer and unconditional, and must not modify or introduce any new terms into the offer." *C. H. Leavell & Co. v. Grafe & Assocs., Inc.*, 90 Idaho 502, 511, 414 P.2d 873, 877 (1966). Johnson testified that he was adamant that any agreement to settle would be conditioned upon the Strata Defendants securing a covenant not to sue that was signed by the Rowans and which expressly stated that BrunoBuilt was an intended third-party beneficiary of that covenant. Even so, as found by the district court, this "condition" was implicit in the Strata Defendants' original offer, which included a covenant that the Rowans would agree not to sue BrunoBuilt for landslide damage caused to their home.

Still, BrunoBuilt argues that a covenant not to sue that is contained in a confidential release agreement—to which BrunoBuilt was not a party and to which BrunoBuilt had no reliable access—does not provide BrunoBuilt with a "direct and independent right to enforce" the covenant. BrunoBuilt argues that the fact that it had no way to verify or see the Rowans' signed covenant not to sue could be problematic when it was the sole consideration being requested for BrunoBuilt's dismissal of the Strata Defendants. On March 3, 2017, Scanlan sent a letter to Johnson including purported language of the release from the *Sericati* action:

> C.  Strata, Inc., through its employees, including, but not limited to, Michael Woodworth, provided site-specific geotechnical engineering services for the homes located at 289 N. Alto Via Ct., Boise, Idaho, owned by Matthew and Stacy Sericati; 241 N. Alto Via Ct., Boise, Idaho, owned by Paul and Becky Rowan; 186 N. Alto Via Ct., Boise, Idaho, owned by Ross Lamm and Leslie Preston; and 205 N. Alto Via Ct., Boise, Idaho, owned by Eric and Tiffany Rossman in the 2012 and 2013 timeframe pursuant to contracts with homebuilders and engineers, including, but not limited to, Brunobuilt, Inc.; Roth Construction, Inc.; Shadow Mountain Homes, Inc.; Northern Construction; and Briggs Engineering, Inc. (hereinafter referred to as "Builders").
>
> . . .
>
> 1.5  Plaintiffs further agree that they shall not institute any suit or other legal actions, or otherwise assert any claims, against Builders based upon or arising out of the events as set forth in the Recitals above and shall withdraw or dismiss any claims, demands, or causes of action previously asserted against

13

> Builders, including, but not limited to, the October 6, 2016, demand made by Paul
> and Becky Rowan to Robert Bruno and Brunobuilt, Inc.

After receiving this language, Johnson responded on March 9, 2017, that "[i]t was very helpfu[l] to have the language the Rowans agreed to. My client is ready to proceed to complete settlement process." Johnson's response undermines BrunoBuilt's argument that it was anticipating receipt of the executed covenant not to sue at a particular time as a material term of the agreement. In determining whether the parties have reached an agreement the Court does not focus on the subjective or uncommunicated beliefs of the parties. Instead, the offer is judged by its objective manifestations. *Seward*, 164 Idaho at 159, 426 P.3d at 1259. Johnson's objective manifestations support the district court's conclusion.

Thus, even if the parties had not discussed the precise terms of how BrunoBuilt would ultimately receive the Rowans' covenant not to sue, the parties could arrive at those terms later, after an agreement had been reached. This aligns with the district court's order instructing the parties to exchange the releases contemplated by the settlement agreement, which specified that the Strata Defendants had to "provid[e] BrunoBuilt with a copy of the covenant not to sue executed by the Rowans." We hold that the district court properly determined that on January 9, 2017, BrunoBuilt, through Johnson, accepted the covenant not to sue as consideration for dismissing the Strata Defendants from the *Kleinfelder* case.

### 3. *Pierringer release and subsequent terms*

The district court recognized that the agreement reached by the parties on January 9 did not specify whether BrunoBuilt would dismiss the entire lawsuit or provide a *Pierringer* release to the Strata Defendants, but assuming this was a material term, the district court held the parties reached an agreement by January 20, 2017, when Johnson told Scanlan that BrunoBuilt "would agree to give Strata a *Pierringer* release." At that point Johnson said:

> Based on my conversations with Mr. Scanlan, it was my intent and understanding
> that Mr. Scanlan would prepare and send to me a draft agreement memorializing
> the release terms the parties had agreed upon and that my client would then have
> an opportunity to review the agreement and sign it, to the extent it accurately
> reflected the parties' agreed-upon terms.

This supports the district court's conclusion that as of January 20, 2017, the parties had "agreed-upon terms."

BrunoBuilt later tried to distance itself from the agreement by alleging Johnson advised Scanlan that BrunoBuilt was no longer interested in signing a *Pierringer* release; however, the

14

district court properly rejected this argument. On March 14, 2017, after the material terms had been reached, Johnson sent Scanlan the following email:

> I ran the issue by the client. If it's giving a release, Robert [Bruno] wants a release. He doesn't need any Pierringer stuff, just that Strata won't darken his door.
>
> The logic is hard to argue. If nobody thinks there is a claim, the harm of guessing right and doing the release doesn't hurt anybody. However guessing wrong only hurts BrunoBuilt.

Despite BrunoBuilt's claim that Johnson was informing Scanlan that BrunoBuilt would no longer provide a *Pierringer* release *to* the Strata Defendants, the reasonable interpretation of this email is that Johnson was specifying that BrunoBuilt did not need a *Pierringer* release *from* the Strata Defendants. It is not reasonable to infer that this email means that BrunoBuilt was suddenly refusing to provide a *Pierringer* release to the Strata Defendants, a term Johnson had already explicitly agreed to on January 20, 2017. Instead, the district court properly concluded this constituted a proposed modification for a mutual release, which the Strata Defendants ultimately accepted.

BrunoBuilt relies on the continuing negotiations that took place between Scanlan and Johnson to argue that an agreement had not been reached between the parties. But as of January 20, 2017, the material terms of the settlement had been reached, despite the subsequent disagreement concerning the final written agreement. "[A] party may not avoid the duties imposed under the terms of a valid and enforceable contract simply because that party subsequently decides that additional terms may be desirable." *Seward,* 164 Idaho at 159–60, 426 P.3d at 1259–60. The district court granted the Strata Defendants' motion to enforce the settlement agreement after finding the following material terms had been reached:

> [T]he undisputed facts in the record reveal that by January 20—prior to circulation of the proposed release terms—the parties reached an enforceable agreement that BrunoBuilt would provide the Strata Defendants with a *Pierringer* release in exchange for the Strata Defendants obtaining a covenant not to sue from the Rowans specific to BrunoBuilt. Thereafter, BrunoBuilt proposed a single modification in the form a mutual release, which was accepted by the Strata Defendants.

The court held that BrunoBuilt's later issues, including the concerns with the confidentiality clause, were not material terms. This is consistent with *Seward*, in which we determined that a party's desire to add a confidentiality clause after an oral settlement agreement had already been

15

reached was not a ground for avoiding enforcement of the agreement. 164 Idaho at 160, 426 P.3d at 1260.

In its final argument that the settlement agreement was not enforceable, BrunoBuilt contends that if the *Pierringer* release was a material term, the agreement was not reached until January 20, 2017. At that point there was no longer consideration because the covenant not to sue from the Rowans was executed on January 12, 2017. The district court rejected this idea below, holding that BrunoBuilt pointed to no authority suggesting that the Strata Defendants' performance of their promise before the final agreement was reached as to the *Pierringer* release negates consideration. BrunoBuilt's suggestion invites a hopeless scenario for the Strata Defendants. On one hand, BrunoBuilt argues that because the Strata Defendants had secured the covenant before a valid settlement agreement with BrunoBuilt was reached, it lacked consideration. On the other, BrunoBuilt insisted that the Strata Defendants had to deliver a signed covenant before there could be a valid settlement agreement. Although the Strata Defendants negotiated the Rowan covenant as part of settling the *Sericati* case, it is reasonable to infer that it did so with the intent that it would serve as consideration for the BrunoBuilt settlement as well. We affirm the district court's holding that a valid settlement agreement existed on January 20, 2017. Because we have affirmed the district court judgment on these grounds we do not reach the alternative bases considered by the district court.

## B.    Neither party is awarded attorney fees on appeal.

The Strata Defendants first request attorney fees under Idaho Code section 12-121. An award of attorney fees pursuant to Idaho Code section 12-121 is not a matter of right, "but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Hoover v. Hunter*, 150 Idaho 658, 664, 249 P.3d 851, 857 (2011). "On the other hand, when a party pursues an action which contains fairly debatable issues, the action is not considered to be frivolous and without foundation." *C & G, Inc. v. Rule*, 135 Idaho 763, 769, 25 P.3d 76, 82 (2001) (citing *Lowery v. Board of County Comm'rs*, 115 Idaho 64, 764 P.2d 431 (Ct. App. 1988)). Based on the complex nature of the issues on appeal, we hold that attorney fees under Idaho Code section 12-121 are not appropriate.

Both parties also request attorney fees under Idaho Code section 12-120(3). BrunoBuilt requests costs and attorney fees under section 12-120(3) to the extent they were incurred as part

16

of the alleged settlement agreement. However, BrunoBuilt did not prevail here and is thus not entitled to attorney fees.

The Strata Defendants also request fees under section 12-120(3), not based on the commercial nature of the settlement agreement, but based on the existence of the commercial transaction that was integral to BrunoBuilt's allegations of professional negligence. Idaho Code section 12-120(3) provides, in pertinent part, that "[i]n any civil action . . . in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." I.C. § 12-120(3).

"The critical test is whether the commercial transaction comprises the gravamen of the lawsuit; the commercial transaction must be integral to the claim and constitute a basis on which the party is attempting to recover." *Lettunich v. Key Bank Nat. Ass'n*, 141 Idaho 362, 368–69, 109 P.3d 1104, 1110–11 (2005) (quoting *Bingham v. Montane Res. Assocs.*, 133 Idaho 420, 426, 987 P.2d 1035, 1041 (1999)). However, for a party to recover under section 12-120(3), "the commercial transaction must be between the parties to the lawsuit." *Clarke v. Latimer*, 165 Idaho 1, 8, 437 P.3d 1, 8 (2018) (citing *Printcraft Press, Inc. v. Sunnyside Park Utils., Inc.*, 153 Idaho 440, 461, 283 P.3d 757, 778 (2012)). "[T]he commercial transaction ground in I.C. § 12–120(3) neither prohibits a fee award for a commercial transaction that involves tortious conduct . . . nor does it require that there be a contract. Thus, as long as a commercial transaction is at the center of the lawsuit, the prevailing party may be entitled to attorney fees for claims that are fundamentally related to the commercial transaction yet sound in tort." *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 755–56, 274 P.3d 1256, 1270–71 (2012) (internal citations omitted).

That both parties have asked for attorney fees under section 12-120(3) does not mean such an award is automatically appropriate. *See Soignier v. Fletcher*, 151 Idaho 322, 326–27, 256 P.3d 730, 734–35 (2011). To recover attorney fees under section 12-120(3), "the commercial transaction must be between the parties to the lawsuit." *Clarke*, 165 Idaho at 8, 437 P.3d at 8. Here, the commercial transaction was between the Strata Defendants and the Subdivision's original developers. BrunoBuilt claimed it was a third-party beneficiary of that commercial transaction. However, the Strata Defendants' services flowed from that contract between the Strata Defendants and the developers of the Subdivision, not BrunoBuilt. The gravamen of BrunoBuilt's professional negligence claim is that the Strata Defendants had a duty to perform services in accordance with the applicable standard of care and breached that duty. The

17

gravamen of BrunoBuilt's claims sound in tort, not a commercial transaction. Even though the Strata Defendants have prevailed on appeal, attorney fees under section 12-120(3) are not appropriate.

## V. CONCLUSION

We affirm the district court judgment because the parties had entered into an enforceable settlement agreement. No attorney fees are awarded on appeal but costs are awarded to the Strata Defendants as they prevailed.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.