# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47193

CITY OF EAGLE, a municipal corporation of the State of Idaho,

    Plaintiff-Appellant,

v.

TWO RIVERS SUBDIVISION HOMEOWNERS ASSOCIATION, INC., an Idaho corporation, KEVIN ZASIO, President,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2020 Term

Opinion Filed: July 7, 2020

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jonathan Medema, District Judge.

The judgment of the district court is <u>vacated</u> and the district court's summary judgment decision is <u>reversed</u>. The case is <u>remanded</u> with instructions to enter judgment for the City and to consider whether injunctive relief is appropriate.

Borton-Lakey Law & Policy, Meridian, for appellant. Joseph Borton argued.

Kelly Law, PLLC, Garden City and Carroll Law, PLLC, Boise, for respondents. Michael Kelly argued.

---

BRODY, Justice.

This appeal involves a dispute between a homeowners' association and the City of Eagle ("the City") over the public's right to use a parking lot located on land owned by the homeowners' association. T.R. Company, LLC ("T.R.") was the developer of a subdivision. In November 2002, the City held a public hearing on T.R.'s request for certain concessions from the City associated with the subdivision. The City argues that T.R. offered to dedicate an easement for public parking on Lot 35 at that hearing, and that the offer was accepted when, a few months later, the City approved T.R.'s design review application showing the specific location and design of the parking lot. Respondent Two Rivers Subdivision Homeowners

1

Association, Inc. ("the Association") argues that no dedication occurred because T.R.'s intent to dedicate was not clear and unequivocal. The district court granted summary judgment in favor of the Association. We vacate the district court's judgment, reverse the district court's decision on summary judgment, and remand with instructions to enter judgment in favor of the City and to consider whether the City is entitled to any injunctive relief.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

T.R. owned land in the City of Eagle that it wanted to develop into a residential subdivision. On November 26, 2002, the City held a public hearing on T.R.'s request to make two of the subdivision's planned streets, Rivermoor and Rivermont, private and gated. The hearing was recorded, and neither party disputes what was said. At the hearing, T.R. was represented by Dan Torfin and Dennis Baker. The specific testimony by Torfin and Baker that is relevant to this appeal will be discussed in greater detail below. At the end of the meeting, Councilwoman Sedlacek made the following motion:

> Mr. Mayor, I move that we modify the original approval . . . with the following changes, that the two streets, specifically Rivermoor and Rivermont will be allowed in private gated communities with the stipulation that they are 36 feet wide as presented by the applicant tonight, and that the public access remain the same with the public parking at the trailhead.

Following a modification to the motion not relevant to this appeal, the motion passed by a 3-2 vote.

On March 6, 2003, T.R. submitted a design review application to the City. The design review application contained a landscape plan showing a parking lot located off of South Channel Way. The landscape plan showed the parking lot as being across the street from two cul-de-sacs and at the head of a pedestrian path along a petroleum easement running perpendicular to South Channel Way. It also showed the size of the parking lot and depicted it as having four parking spaces, all on the left side of the parking lot. On May 13, 2003, the City approved T.R.'s design review application.

T.R.'s final plat for the subdivision was approved by the Eagle City Council on August 12, 2003 and recorded on December 18, 2003. The plat notes refer to various easements within the subdivision, such as a street light easement over all lot lines common to public rights-of-way, but it does not indicate that there is an easement for public parking on Lot 35. One of the plat notes describes how Lot 35 will be used and specifies that it will be owned by the Association:

> All lots within this subdivision are single-family residential lots, except Lots 43

2

and 44, Block 20; Lots 22, 34, and 35, Block 24; Lot 1, Block 35; Lot 1, Block 36; Lot 1, Block 37; and Lot 1, Block 38; which are designated as common landscape and private recreation lots and will be owned and maintained by the [Association].

The public used the parking lot from 2004 to 2015. In late 2015, however, a dispute arose between the City and the Association over whether the public could continue using the parking lot. The City alleges that in 2015, "Resident Parking Only" signs were posted at the parking lot, and that in 2017, bollards were erected that prevented any vehicle from accessing the parking lot. The City also claims that the Association threatened to sue members of the public that used the parking lot. In its answer, the Association admitted that "Resident Parking Only" signs were erected. (However, in an affidavit of a subdivision resident that the Association submitted in response to the City's motion for summary judgment, the resident testified that there were never any signs installed on the parking lot during the seven and a half years that she served on the Association's Board of Directors.) The Association denied that it threatened to sue members of the public. In its memorandum in support of its motion to dismiss, the Association acknowledged that bollards were erected but stated that they have since been removed.

In February 2016, the City's Zoning Administrator sent a letter to the Association's president asserting that the parking lot was for the benefit of the public and asking for the "Resident Parking Only" signs to be removed. In response, the Association's Board of Directors sent a letter refusing to remove the signs and demanding that the City withdraw its claim that the Association was required to allow the public to use the parking lot. Several more letters were exchanged over the following year, but no resolution was reached.

The City filed a complaint against the Association in October 2017. The complaint included four counts: (1) "Declaratory Judgment," (2) "Exercise of Statutory Authority," (3) "Enforcement of Eagle City Code Sections 8-2A-20 and 8-7-2," and (4) "Injunctive Relief." In its prayer for relief, the City asked for a declaratory judgment and an injunction.

The Association filed a motion to dismiss the City's complaint under Idaho Rules of Civil Procedure 12(b)(1) and 12(b)(6). The City filed a response in which it asserted common law dedication as a theory supporting its claim. The district court entered a memorandum decision and order granting in part the Association's motion to dismiss. It denied the motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), concluding that the City had standing to bring its suit. It granted the motion to dismiss for failure to state a claim under Rule 12(b)(6)

as to Counts II, III, and IV of the City's complaint. However, it only conditionally granted the motion to dismiss as to Count I, allowing the City to amend that count to sufficiently state a claim for common law dedication.

Following entry of the district court's order, the City filed an amended complaint to more clearly state a common law dedication claim. The City did not reassert its previous claims like Counts II or III in its original complaint, but it did add a new claim for "equitable and injunctive relief" similar to Count IV. The Association then filed a second motion to dismiss, which the district court granted as to the "equitable and injunctive relief" claim, but not as to the common law dedication claim. Subsequently, the Association filed an answer to the City's amended complaint.

The City then filed a motion for summary judgment. In support of the motion, the City filed the affidavit of Dan Torfin. Attached to Torfin's affidavit were five exhibits, which included a Google map of the subdivision as a whole, two Google maps of the parking lot area within the subdivision, the subdivision plat, and relevant portions of T.R.'s design review application. The City also filed an affidavit of Sharon Bergmann, Eagle City Clerk, attached to which were the transcript and minutes from the November 26, 2002 hearing.

The district court held a hearing on the City's motion for summary judgment. At the hearing, counsel for the City acknowledged that the district court could grant summary judgment in favor of the Association, even though the City was the moving party, because a party moving for summary judgment runs the risk that summary judgment will be granted in favor of the non-moving party. Following the hearing, the district court entered an order granting summary judgment in favor of the Association. Soon afterwards, the district court entered a judgment dismissing all pending matters with prejudice. The City filed a timely notice of appeal from the district court's judgment.

## II. STANDARD OF REVIEW

When reviewing rulings on summary judgment motions, this Court uses the same standard as the district court. *Eldridge v. West*, 458 P.3d 172, 177 (Idaho 2020). The district court must grant summary judgment to the movant if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* (quoting I.R.C.P. 56(a)). However, the district court may grant summary judgment to the non-moving party because a "motion for summary judgment allows the court to rule on the issues

4

placed before it as a matter of law; the moving party runs the risk that the court will find against it." *Rowley v. Ada Cty. Highway Dist.*, 156 Idaho 275, 277–78, 322 P.3d 1008, 1010–11 (2014) (quoting *Harwood v. Talbert*, 136 Idaho 672, 677, 39 P.3d 612, 617 (2001)). When a district court grants summary judgment to the non-moving party, this Court liberally construes the record in favor of the party who the district court entered summary judgment against. *Id.* at 278, 322 P.3d at 1011. A district court's conclusions of law are reviewed de novo. *Id.* at 277, 322 P.3d at 1010.

## III.    ANALYSIS

### A. The district court erred in granting summary judgment in favor of the Association.

The district court granted summary judgment in favor of the Association on the City's common law dedication claim. It reasoned that during the November 26, 2002 hearing, T.R. only expressed an intention to offer an easement for public parking sometime in the future; it did not make a present offer of dedication at the hearing. As a result, the district court concluded it was unnecessary to address whether the acceptance element of common law dedication had been met. The district court also held that even if a dedication occurred, it would be void for failure to comply with the statute of frauds.

The City argues that an offer was made by T.R.'s representatives at the November 26, 2002 meeting, and that the specifics of the offer were finalized when, on March 6, 2003, T.R. submitted a design review application showing the specific location and design of the parking lot. The City argues that the offer was accepted when the City approved the design review application, and upon acceptance, T.R.'s dedication of an easement for public parking was complete. In response, the Association argues that no dedication occurred because T.R.'s intent to dedicate was not clear and unequivocal, agreeing with the district court that no offer to dedicate was ever made. The Association also emphasizes the plat's lack of any indication of a dedication for public parking on Lot 35 and notes that final plats are required to depict all existing easements under Idaho Code sections 50-1302 and 50-1304(2). The Association also argued, in its briefing, that the district court properly concluded that common law dedication is subject to the statute of frauds. However, during oral argument before this Court, counsel for the Association conceded that offers to dedicate do not need to be in writing.

Based on the undisputed facts, we hold that an offer to dedicate was made and accepted, thereby creating a valid common law dedication of an easement for public parking on Lot 35.

Therefore, the district court erred in granting summary judgment in favor of the Association on the City's common law dedication claim.

Dedication is the act of setting aside real property for the use or ownership of others. *Rowley*, 156 Idaho at 278, 322 P.3d at 1011. Property can be dedicated to private persons or to the public. *Id.* Property is dedicated to the public by statute or by common law. *Id.* In this case, the City is only claiming dedication by common law, not by statute. In order for a common law dedication to the public to be effective, it must satisfy a two-part test: (1) "the landowner must clearly and unequivocally indicate intent to dedicate the land to the public," and (2) "the public must accept the offer." *Id.* The landowner's intent must not be presumed. *Id.* "The substance of an offer of dedication is not measured until the time of acceptance, and an accepted offer of dedication is irrevocable." *Asbury Park, LLC v. Greenbriar Estate Homeowners' Ass'n, Inc.*, 152 Idaho 338, 343, 271 P.3d 1194, 1199 (2012).

T.R. clearly and unequivocally indicated its intent to dedicate an easement for public parking on Lot 35. The recorded testimony of T.R. representatives Torfin and Baker during the November 26, 2002 public hearing show that they offered to grant the public the right to use the planned Lot 35 parking lot in order to access the planned nearby trails, and that this offer was made as a *quid pro quo* with its request that Rivermoor and Rivermont streets be private and gated. For example, Torfin stated, "we are proposing . . . that on this petroleum easement we are going to construct a greenbelt, which will be a public greenbelt. We are also going to construct a trail that leads to the river and provides access along the river. *We're proposing that this be a trailhead that provides some limited parking*." (Emphasis added.) This comment was made in the context of addressing concerns about T.R.'s request for private streets that had been raised at a previous meeting. After first addressing the concern about design standards for the width of the private streets, Torfin next addressed the concern about public access to the trails: "One of the concerns -- or one of the discussion items that we had at our last meeting was on the -- was on the design standards. . . . [A]nother issue that we -- that we discussed was access." Thus, Torfin's testimony shows that T.R. was making a specific offer to allow the public to use parking by the trailhead in order to alleviate the City Council's concerns about how public access to the trails would be impacted by granting T.R.'s request to make the nearby Rivermoor and Rivermont streets private and gated. Baker, likewise, described planned off-street parking for public at the trailhead: "So we would propose that those two cul-de-sacs be private. And we have parking off

6

street and provide for the public to access that . . . people who are just walking the greenbelt, not visiting the residents there." Therefore, the first part of the two-part test for common law dedication is satisfied: T.R. clearly and unequivocally indicated its intent to dedicate an easement for public parking on Lot 35 as an inducement for approval of making the two streets private and gated.

Contrary to the district court's conclusion, we hold that the testimony of T.R.'s representatives shows that this was a present offer—not an expression of intent to make an offer in the future. For example, Baker explained how allowing Rivermoor and Rivermont to be private and gated would prevent members of the public, attracted by the availability of off-street public parking to access the trails, from also parking on the streets: "And we're going to provide parking that we didn't show you in the last meeting, that Dan did show you tonight . . . But once you bring the public into the parking that Dan showed you tonight, then we're going to have people trying to park in the cul-de-sacs." This demonstrates that Baker viewed the eventual construction of the parking lot for public use as a given—a certain inconvenience to nearby residents, unless their streets were made private. Additionally, Torfin's use of the present tense contraction "we're" in his statement "[w]e're proposing that this be a trailhead that provides some limited parking" shows that a *present* offer was being made. Likewise, shortly afterwards, Torfin used the present tense when stating, "With this concept, we *are* providing, in our minds, adequate access to those public spaces . . . ." (Emphasis added.) The district court reasoned that T.R. only expressed an intention to make an offer in the future because the language in the following testimony by Torfin was "all conditional":

> We also presented information that the parking, there would be some -- I'm going to call them nodules of parking that will be incorporated into the landscaping to provide guest parking. Or -- or that we will -- when we come in with the final plan, we'll have a plan that addresses the parking. . . . We're proposing that this be a trailhead that provides some limited parking. There will also be parking on this collector road, which will be built to 36 feet back of curb, back of curb, out with meandering walks that run along here. But this will provide a point of access, a trailhead that will -- that will lead people in this direction or to the river.

> With this concept, we are providing, in our minds, adequate access to those public spaces, which is the river and the public greenbelt. In addition, in a future phase, we do have the ability, when we get up to this pan where we interface with Mace Road to incorporate some additional parking at this end, and -- for the public. And that's what this is for too is for the public as well, as well as on-street parking.

This portion of Torfin's testimony does indicate that there would be a future plan "that addresses the parking," but the previous sentence shows that this comment was referring to guest parking within the private streets, not the parking lot by the trailhead. Likewise, the sentence beginning with "[i]n addition" does refer to a "future phase," but it is clearly referring to public parking *other* than the parking lot by the trailhead because immediately afterwards, Torfin distinguishes it from the trailhead parking lot he was just discussing by stating, "[a]nd that's what *this* is for *too* is for the public as well." (Emphasis added.) Therefore, T.R. made a present offer of dedication at the November 26, 2002 hearing—it did not simply express an intention to make such an offer in the future.

The Association argues that even if T.R. made a present offer to dedicate, it was not a valid offer because it was unclear what land or property interest T.R. intended to dedicate. The Association is correct that "[t]o constitute a good common-law dedication, a definite and certain description of that which is proposed to be dedicated is necessary." *Nesbitt v. Demasters*, 44 Idaho 143, 255 P. 408, 409 (1927). This need for specificity in offers of dedication is similar to the requirement that a contract be "complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Brunobuilt, Inc. v. Strata, Inc.*, 166 Idaho 208, 457 P.3d 860, 869 (2020). The similarity is unsurprising because "a dedication of land bears a close analogy to the offer and acceptance of a contract." 77 Am. Jur. 3d *Proof of Facts* § 1 (2004).

T.R.'s offer was sufficiently specific because "[t]he substance of an offer of dedication is not measured until the time of acceptance." *Asbury Park*, 152 Idaho at 343, 271 P.3d at 1199. The City claims that the offer was accepted when T.R.'s design review application was approved on May 13, 2003. The design review application showed the precise location and design of the parking lot at issue. For example, as noted above, it showed the size of the parking lot, its location at the head of a pedestrian path along the petroleum easement, and the number of parking spaces it would contain. Therefore, even if the description of the land to be dedicated for public use was insufficient at the time of the November 26, 2002 hearing, it was sufficient by the time the offer was accepted.

Furthermore, the property interest to be dedicated was evident from the testimony at the November 26, 2002 hearing. An easement is defined as "the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner."

8

*Tower Asset Sub Inc. v. Lawrence*, 143 Idaho 710, 714, 152 P.3d 581, 585 (2007). Although no one at the November 26, 2002 meeting used the word "easement," it is clear from the testimony of Torfin and Baker that they were offering the public a right to use the planned parking lot for a specific purpose: parking to access the nearby trails. For example, Torfin associated the parking lot with access to the trails when he stated, "We're proposing that this be a trailhead that provides some limited parking." Nothing in the hearing transcript suggests that T.R. was offering to grant the public the right to the parking lot property for any other purpose, or was offering to transfer ownership of the parking lot to the City. Therefore, T.R.'s common law dedication for public parking was valid because it adequately described what it intended to dedicate.

The Association argues that the final plat's lack of any indication there was an easement for public parking over Lot 35 made any intent to dedicate such an easement ambiguous, so T.R.'s alleged offer was not "clear and unequivocal" as required by Idaho's two-part test for common law dedications. However, as noted above, the City claims that the offer was accepted when the Eagle City Council approved the design review application on May 13, 2003. This was approximately three months before the final plat was approved by the Eagle City Council and approximately seven months before the final plat was recorded. As a result, if the City is correct that there was a valid acceptance of the offer on May 13, 2003, the dedication would be complete and the plat would be irrelevant for purposes of determining T.R.'s intent. For the reasons set out below, we determine that there was a valid acceptance of the offer on May 13, 2003. Therefore, it is not necessary to determine whether the plat made T.R.'s intent to dedicate less than "clear and unequivocal."

Looking at the undisputed facts in a light most favorable to the non-moving party, we hold that the City accepted T.R.'s offer of dedication on May 13, 2003, when it approved T.R.'s design review application. More specifically, the City accepted T.R.'s more general offer of dedication made at the November 26, 2002 hearing, and then finalized that acceptance once it approved of the specific location and design of the parking lot contained in T.R.'s design review application. We reach the issue of acceptance, even though the district court did not, because the material facts of this case are undisputed.

Councilwoman Sedlacek's motion at the end of the November 26, 2002 hearing explicitly included an acceptance of T.R.'s offer of an easement for public parking near the trailhead:

Mr. Mayor, I move that we modify the original approval . . . with the following

9

changes, that the two streets, specifically Rivermoor and Rivermont will be allowed in private gated communities with the stipulation that they are 36 feet wide as presented by the applicant tonight, *and that the public access remain the same with the public parking at the trailhead*.

(Emphasis added.) By passing this motion, the Eagle City Council accepted T.R.'s offer of an easement for public parking in the general location discussed at the hearing: adjacent to the trailhead and near Rivermoor and Rivermont streets. As discussed above, T.R.'s design review application, submitted approximately four months later, showed the specific location and design of the parking lot discussed at the hearing. Therefore, when the City approved the design review application on May 13, 2003, its acceptance of T.R.'s offer of dedication was complete.

## B. It is unnecessary to determine whether the district court erred by dismissing Counts II and III of the City's complaint.

At the hearing before this Court, counsel for the City stated that if the Court were to reverse the district court's grant of summary judgment, its assignments of error regarding Counts II and III would become moot. For the reasons set out in the previous section, we are reversing the district court's grant of summary judgment. Therefore, it is unnecessary to decide whether the district court erred by dismissing Counts II and III of the City's complaint.

The City argues that the district court erred by dismissing Count IV—its claim for injunctive relief. It contends that injunctive relief is necessary in order to prevent the Association from blocking public access to the parking lot again in the future. We decline to reach the issue of injunctive relief on appeal. On remand, we direct the district court to determine the scope of injunctive relief, if any, to which the City may be entitled.

## IV.    CONCLUSION

In light of the foregoing, we vacate the district court's judgment and reverse the district court's decision to award summary judgment to the Association on the City's common law dedication claim. Additionally, we remand with instructions to enter judgment in favor of the City and to consider whether the City is entitled to any injunctive relief. We do not award the Association its requested attorney fees on appeal because it is not the prevailing party. The City is entitled to its costs, however, pursuant to I.A.R. 40(a).

Chief Justice BURDICK, and Justices BEVAN, STEGNER and MOELLER CONCUR.

10